Mrs. Winifred Alma McDonald v. McDonald Holding Corporation.

165 So. 363.
Division B.
Opinion Filed March 20, 1935.
Opinion on Rehearing Filed October 2, 1935.
Opinion Filed on Further Rehearing December 31, 1935.

*E. W. & R. C. Davis,* for Appellant;
*Green & West,* for Appellee.

Buford, J.—Appellant here was complainant in the court below and exhibited a bill of complaint seeking to have cancelled a certain purported deed, which deed purported to

convey the interest of the complainant, Winifred Alma McDonald, a married woman, in and to certain property therein described to McDonald Holding Corporation, a corporation organized and existing under the laws of the State of Florida, it being alleged that the property in which the interest was purported to have been conveyed was property held as an estate by entireties, the title being so vested in Winifred Alma McDonald and her husband, Charles I. McDonald.

It was alleged in the bill of complaint that the deed was void as a conveyance for two reasons. The first reason was that the signature of the complainant was obtained by figures and that she did not freely and voluntarily sign the conveyance. The second reason was that the deed was void as a conveyance of the separate property of the complainant because the deed was not executed by the complainant before a Notary Public and that she never at any time appeared before a Notary Public and acknowledged execution of the conveyance.

On the question of duress the evidence was conflicting and we may say that we would not reverse the decree from which appeal is taken on the ground that the Chancellor was not justified in finding that the signature to the conveyance was not obtained by duress. We then come to the other ojection to the deed (and let us here emphasize the fact that we are dealing with a conveyance made by a wife of her separate property, being her interest in an estate held by entireties, to a corporation and that so far as the record shows no valuable consideration was involved, or passed to any one, for the execution of this conveyance, and, therefore, the question of estoppel does not arise as it might where the wife has apparently in good faith signed a mortgage upon which money has been loaned and where there may be serious doubt as to whether or not the wife

appeared before the officer purporting to take an acknowledgment). There might be cases in which the wife, having caused another to part with his money or other thing of value in good faith would be estopped from denying that she had lawfully executed the mortgage or conveyance upon the good faith of which the other has parted with his money or property. In this case there is no evidence that McDonald Holding Corporation parted with any property upon the faith of the legal execution of this conveyance or that, depending upon what appeared to be a legal execution of this conveyance, it has changed its position to its detriment.

So what may have been considered or stated in the various cases involving the execution of mortgages by married women, which mortgages were alleged not to have been acknowledged by the married woman executing the same before the officer purporting to take the acknowledgment is not to be held to be of controlling effect in this case.

Section 1 of Article XI of the Constitution is only applicable here insofar as it defines what shall be deemed and held to be the separate property of a married woman.

Section 3803 R. G. S., 5676 C. G. L., is as follows:

"To render such sale, conveyance, mortgage or relinquishment, whether of separate estate or of dower, effectual to pass a married woman's estate or right, she must acknowledge, before some officer authorized to take acknowledgment of deeds, separately and apart from her husband, that she executed the same freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her husband, and the officer's certificate shall set forth all the foregoing requirements."

Now, unless this section is complied with, an instrument executed by a married woman purporting to convey her separate property could pass no title. Therefore, as a muniment of title it is void.

In McEwen v. Schenck, 108 Fla. 119, 146 Sou. 839, this Court held, quoting from Hutchinson v. Stone, 79 Fla. 157, 84 Sou. 151, as follows:

"While the certificate of an officer who is authorized to take acknowledgment of deeds and mortgages, stating in effect that a named married woman duly acknowledged before him the execution of a deed or mortgage alienating homestead real estate, is a *quasi* judicial act, and where the married woman who made the acknowledgment and the executed instrument are in fact *before* the officer, and he undertakes to act officially, the certificate of the official as to the acknowledgment, when duly made, is, in the absence of fraud or duress, conclusive of the facts stated in the official certificate, yet if the married woman who made the acknowledgment was not in fact *before* the officer when the acknowledgment was made, the officer is without jurisdiction, authority or power to take the acknowledgment of the married woman, or to make the statutory certificate with reference thereto. 1 C. J. 775. The absence of such jurisdiction, authority or power to take the acknowledgment or to make the certificate relative to it, because the married woman was not *before* the officer when the acknowledgment was taken, may be shown *aliunde;* and when it is duly and clearly made to appear that the married woman was not in fact *before* the officer when the acknowledgment of the execution was made, the officer's certificate as to the acknowledgment is of no validity or effect to show that the deed or mortgage of homestead real estate was 'duly executed' as is mandatorily required by the Constitution."

Mr. Justice DAVIS, in a specially concurring opinion in that case, said:

"As was said by this Court in Herald v. Hardin, 95 Fla. 889, 116 So. Rep. 863, the certificate of acknowledgment of

a married woman is conclusive against her in the absence of *fraud* or duress, and the testimony of the parties alone is not sufficient to overcome it, nor can the testimony of the officer taking the certificate be admitted to contradict his official certificate.

"But as Mr. Justice WHITFIELD points out in his opinion, in which I concur, this case deals with an allegation *in the pleadings* to the effect that the officer's certificate of acknowledgment is false and was made without any jurisdiction whatsoever to make it, in that the wife who is referred to therein was *never before the attesting officer at all,* therefore, cannot be bound by what the officer has falsely certified to (assuming that the allegation made is established as true). Such allegations, according to my view, amount *per se* to an allegation that *fraud* was committed by the notary public in the particulars complained of, thereby bringing the case within the rule laid down in Herald v. Hardin, *supra.*

"Since the answer alleged *fraud in law* the Chancellor should have considered and passed on the evidence to the extent of determining therefrom that the officer who made the certificate of acknowledgment had acquired jurisdiction to act by having had the parties appear before him."

The present writer did not agree with the conclusion reached in that case but, by the rule of *stare decisis,* the principle there expressed has become fixed as the law of this State except probably in cases where it may be held that the married woman is estopped by reason of having caused a change in the status of the parties to set up her failure to appear before the officer purporting to take the acknowledgment as a defense in a cause in equity or as a ground for equitable relief, but, as above stated, the principle of estoppel could not be invoked in this case.

Now we come to an examination of the evidence to determine whether or not the allegations of the bill of complaint have been sustained. There are many pages to the transcript of testimony in this case brought here for our review and it is safe to say that four-fifths of the testimony could have nothing whatever to do with, or have any bearing upon the issues made by the pleadings. Most of this testimony would have been admissible in a suit for divorce or for separate maintenance, suit money and alimony, but had no place in this record.

It has been suggested that the notary public who took the acknowledgment was available and if the complainant's contention were true the notary public might have been called as a witness in her behalf. It is well settled that an officer purporting to take an acknowledgment can not be heard to impeach his acknowledgment and, therefore, the testimony of a notary public who has signed a certificate of acknowledgment could have no probative force one way or another. The officer could not be heard to impeach his certificate. Therefore, he can only be heard to swear one way. He has already under oath made the certificate and swearing again to the same state of facts does not in any way strengthen that testimony. There are only two witnesses who testified in regard to the signature of the complainant. The complainant testified positively that she did not at any time appear before the notary public for the purpose of acknowledgment of the execution of the instrument. The other witness was the young man who procured complainant's signature to the instrument. The record shows that he was first duly sworn. If he was and took the oath to tell the truth, the whole truth and nothing but the truth, and we assume that he did, the complainant's testimony insofar as the acknowledgment before the notary public is

concerned is fully corroborated. He testified that he received the deed about eight o'clock in the morning with directions to get complainant's signature to it. He says that he put the deed in his pocket and carried it about with him until about noon time; that he then went to her home and found complainant reclining on a couch; that she, without objection, signed the paper with his fountain pen; that he put the paper in his pocket; carried it to the office and put it in the safe. He did not testify that there was any notary public present who took an acknowledgment and as he was sworn to tell the whole truth, we must draw the conclusion that he did not tell that because it was not true. He purported to tell exactly what happened there. The only difference between his statement and the complainant's statement is that she testified that there was considerable coercion on the part of the young man to procure her signature to this deed; that he told her, amongst other things, that her husband had sent him there to get it signed and that if she did not sign it that she knew that her husband would "beat hell out of her" and she said that she knew from past experience that that was what would happen.

We think the evidence is conclusive; that the complainant did not appear before a notary public for the purpose of making acknowledgment to execution of the deed and that she was not before the notary public at the time the certificate of acknowledgment was placed thereon and that the notary public never acquired jurisdiction to make the certificate of acknowledgment insofar as the complainant was concerned.

For this reason, the decree appealed from should be reversed, with directions to the Chancellor to enter an order cancelling the purported deed as prayed for in the bill of complaint. The record shows that the title to the property

was held by the husband and wife as an estate by the entireties and the record further shows that the marital relations existing between the husband and wife have not been dissolved. Therefore, it would not be legal or proper for the Court to grant the prayer of the bill which sought an order placing the complainant in the exclusive possession and control of the property involved.

So ordered.

Reversed and remanded with direction.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.

ELLIS, P. J. (concurring).—I agree with the conclusion reached by the Court that the deed should be cancelled because of the fact established by the evidence that Mrs. McDonald did not appear before the notarial officer for the purpose of making acknowledgment of the execution of the deed.

I adhere to the views expressed by me in the case of Helland v. Evans, 113 Fla. 839, 152 South. Rep. 623, and the views expressed by me in my dissenting opinion in the case of M. A. Smith, as Liquidator of the Bank of Wauchula v. McEwen and wife, 119 Fla. 588, 161 So. 68. See also Flowers v. Schenck, 110 Fla. 256, 148 South. Rep. 581, in which I said that the plea so far as its averments were concerned, set up a good defense, but because the rule requiring verification and certificate of counsel was ignored the plea should not have been permitted to stay in the record.

## ON REHEARING GRANTED

PER CURIAM.—This cause comes before us again pursuant to a rehearing granted after the original opinion was filed herein on March 20, 1935.

As stated in the original opinion, the suit was instituted in the court below by the appellant here seeking to vacate and have adjudicated null and void a certain purported deed conveying certain property from Cecil I. McDonald and a complainant in the court below, Mrs. Winifred Alma McDonald, to McDonald Holding Corporation, a corporation organized under the laws of the State of Florida. That opinion was written upon the theory that the conveyance by which Winifred Alma McDonald and Cecil I. McDonald ascertained the property conveyed to them an estate by the entireties and, therefore, the question of whether or not the complainant in the court below acknowledged the execution of the deed to and in the presence of the notary public purporting to take the acknowledgment was a material and controlling factor.

Upon rehearing, it is brought to our attention that the record without contradiction shows that insofar as the title to the following described property, to-wit:

"Lots 1 to 7 inclusive, Nora V. Haynes' Subdivision, as recorded in Map Book 2, Page 176, Volusia County records, the above property is a subdivision of that property lying East of Beach Street and of Lots 1, 2 and 3, Block 1, Hodgman's Daytona, according to Map Book 2, Page 82, Volusia County Records, and also beginning at a point in the East line of Beach Street where the North line of Lot 1, Block 60, Daytona, would intersect same when extended Easterly across said Beach Street; Thence running Easterly along the extended North Line of Lot 1, Block 60, 300 feet more or less, to the water or shore line of marsh; Thence running in a southerly direction along said shore line of marsh to a point in said shore line where it would be intersected by the Easterly extended South line of Lot 1, Block 60, a distance of about 118 feet; thence running Westerly along the East-

erly extended South line of Lot 1, Block 60, 300 feet, more or less, to East line of Beach Street; thence Northerly along said East line of Beach Street 118 feet to place of beginning,. as per Map in Deed Book 1, page 704, public records of Volusia County, Florida. It being intended to convey a strip of land one hundred and eighteen feet wide running from East line of Beach Street to water line of marsh in the unsurveyed marsh land lying in front of said Lot one (1) Block Sixty (60) of Higbee's Addition to Daytona (Volusia County, Florida, and of record in said Court, excepting, however, insofar as that portion of the immediately above described property, to-wit:

"Beginning at a point in the East line of South Beach Street, where the South line of Lot 1, Block 60, of Daytona, Florida, would intersect the same where extended Easterly across said Beach Street; thence from that point running Easterly along the extended South line of Lot 1, Block 60,. 125 feet to a point; thence running Northerly 60 feet to a point; thence running Westerly 125 feet to a point in Beach Street; thence running Southerly along the Easterly side of Beach Street 60 feet, more or less to the place of beginning, it being intended to convey a strip of land approximately 60 feet wide by 125 feet deep, of the unsurveyed marsh land lying in front of said Lot 1, Block 60, being a portion of the land conveyed by Harriett L. Higby, to E. T.. Conrad and recorded in Deed Book 35, page 45, of the Public Records of Volusia County, Florida, said land being. a portion of Higbee's Daytona, map of which is on record. in the public records of Volusia County, Florida,"

is concerned, it was conveyed by Charles M. McDonald and Maggie McDonald his wife, by deed executed on the 19th day of September, 1927, to Cecil I. McDonald and Winifred Alma McDonald for the sole purpose of having the title

rest in the grantees until such time as it could be reconveyed without intervention of creditors to Charles M. McDonald and his wife, Maggie McDonald, the grantors. That it was never intended between the parties to pass the beneficial interest in the property to Cecil I. McDonald and his wife, Winifred Alma McDonald and that the property was to be reconveyed on demand by the grantees to the grantors. That while the property was so held by Cecil I. McDonald and wife, Charles M. McDonald died and left surviving him as his only heirs at law his wife, Maggie McDonald and his son, Cecil I. McDonald. That after the death of Charles M. McDonald, Cecil I. McDonald and his mother, Maggie McDonald, organized a corporation called the McDonald Holding Corporation for the purpose of taking over the assets of the estate of Charles M. McDonald.

It is further shown that the conveyance here involved was for the purpose of returning to the estate of Charles M. McDonald the property which had been deeded by Charles M. McDonald and wife to Cecil I. McDonald and wife under the terms and conditions above mentioned. Under this state of facts Section 3803 R. G. S., 5676, C. G. L., is inapplicable, as is also Section 1, of Article XI of the Constitution. Mrs. McDonald did not hold the property either as her separate estate nor did she have in it any rights under the deed from Charles M. McDonald and Maggie McDonald except the rights of one holding in trust for the grantors. It was her duty under the terms of the argument by which the conveyance was made to Mrs. McDonald and her husband to reconvey the property on demand. It is shown conclusively that no consideration passed for the making of either of the deeds involved.

Aside from this, we are forced to the conclusion that the Chancellor was authorized to consider the certificate of

the Notary Public as evidence of the contents thereof and that prima facie that certificate was valid and in contradiction of that he was authorized to consider the testimony of Mrs. McDonald to the effect that the Notary Public did not have jurisdiction to take her acknowledgment because she did not appear before the Notary Public and did not at any time acknowledge the execution of the instrument before the Notary Public and that, therefore, the Notary Public never acquired jurisdiction to make and execute the acknowledgment.

While the record leads us to strongly suspect, and probably warrants the belief, that Mrs. McDonald did not in fact appear before the Notary Public, this was a question which was presented to the Chancellor and which he determined, upon consideration of the evidence presented by the certificate itself and upon the evidence given by Mrs. McDonald, adversely to Mrs. McDonald. The rule is too well settled that this Court will not disturb the findings of the Chancellor on questions of fact upon conflicting evidence, unless it is made clearly to appear that the findings of the Chancellor are erroneous, for us to now disregard the findings of the Chancellor in this behalf.

For the reasons stated, we now, therefore, recede from the opinion and judgment filed herein on March 20, 1935, and affirm the decree of the Chancellor.

It is so ordered.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

BROWN, J., concurs in the conclusion.

### ON FURTHER REHEARING

PER CURIAM.—Upon further consideration after argument pursuant to a second rehearing granted, a majority of

the members of the Court are of the opinion that the order affirming the decree of the Chancellor, which order was filed herein on October 2nd, 1935, should be adhered to and the said decree be reaffirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and ELLIS, BROWN, BUFORD, and DAVIS, J. J., concur.