JOHN W. DuBOSE v. FRANK J. KELLY, as City Clerk of the City of Miami; and HARRY J. TRYON, Intervenor.

181 So. 11.
Opinion Filed May 6, 1938.
Rehearing Denied May 21, 1938.

*Casey, Walton & Spain, Pine & Giblin, Marion E. Sibley, R. R. Rhudy, J. Velma Keen* and *Whitfield & Whitfield,* for Appellant;

*John W. Watson,* for Appellee Kelly.

*George E. McCaskill, Abe Aronovitz* and *James Messer, Jr.,* for Appellee Tryon.

CHAPMAN, J.—The parties to this cause in this opinion will be referred to as they appeared in the lower court as plaintiff and defendant. On the 25th day of April, 1938, plaintiff filed in the Circuit Court of Dade County, Florida, his bill of complaint seeking a restraining order against the defendant enjoining him from taking certain steps incident to a recall election under the charter provisions of the City of Miami, in which it was alleged that there was not a substantial compliance therewith. The plaintiff is a member of the City Commission of the City of Miami. The material provisions are, viz.: Chapter 9024, Special Acts of 1921, as re-enacted by Chapter 10847, Acts of 1925, which provides:

"PROCEDURE FOR FILING RECALL PETITION.—Any member of the Commission may be recalled and removed therefrom by the electors of the City as herein provided.

"Any qualified elector of the City may make and file with the City Clerk an affidavit containing the name or names of the Commissioner or Commissioners whose removal is sought and a statement of the grounds for removal. The Clerk shall thereupon deliver to the elector making such affidavit copies of petition blanks for such removal, printed forms of which he shall keep on hand. Such blanks shall be issued by the Clerk with his signature and official seal thereto attached; they shall be dated and addressed to

the Commission, shall contain the name of the person to whom issued, the number of blanks so issued, the name of the person or persons whose removal is sought, and the office from which such removal is sought. A copy of the petition shall be entered in a record book to be kept in the office of the Clerk. The recall petition, to be effective, must be returned and filed with the Clerk within thirty (30) days after the filing of the affidavit. The petition before being returned and filed shall be signed by registered voters of the City to the number of at least fifteen per cent (15%) of the total number of registered voters of the City as shown by the City registration books, and to every such signature shall be added the place of residence of the signer, giving the street and number or other description sufficient to identify the place. Such signatures need not all be on one paper, but the circulator of every such paper shall make an affidavit that each signature appended to the paper is the genuine signature of the person whose name it purports to be. All such recall papers shall be filed as one instrument with the endorsements thereon of the names and addresses of three persons designated as filing the same.

"EXAMINATION AND AMENDMENT OF RECALL PETITIONS. —Within ten (10) days after the filing of the petition the Clerk shall ascertain whether or not the petition is signed by the requisite number of registered voters and shall attach thereto his certificate showing the result of such examination. If his certificate shows the petition to be insufficient, he shall forthwith so notify in writing one (1) or more of the persons designated on the petition as filing the same; and the petition may be amended at any time within ten (10) days, after the giving of said notice, by the filing of a supplementary petition upon additional petition papers, issued, signed, and filed as provided herein for the original petition. The Clerk shall, within ten days after

such amendment, make like examination of the amended petition, and attach thereto his certificate of the result. If then found to be insufficient, or if no amendment was made he shall file the petition in his office and shall notify each of the persons designated thereon as filing it of that fact. The final finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

"CALLING OF RECALL ELECTION.—If the petition or amended petition shall be certified by the Clerk to be sufficient he shall submit the same with his certificate to the Commission at its next meeting and shall notify the Commissioner or Commissioners whose removal is sought of such action. The Commission shall thereupon within ten (10) days of the receipt of the Clerk's certificate, order an election to be held not less than thirty (30) nor more than forty-five days thereafter. Provided, that if any municipal election is to occur within sixty (60) days after the receipt of said certificate, the Commission may in its discretion provide for the holding of the removal election on the date of such other municipal election.

"FORM OF BALLOT TO RECALL COMMISSIONER.—Unless the Commissioner or Commissioners whose removal is sought shall have resigned within ten (10) days after the receipt by the Commission of the Clerk's certificate, the form of the ballot at such election shall be as nearly as may be: 'Shall A be recalled?' 'Shall B be recalled?' etc., the name of the Commissioner or Commissioners whose recall is sought being inserted in place of A, B, etc., and the ballot shall also contain the names of the candidates to be elected in place of the Commissioner or Commissioners recalled, as follows: 'Candidates for the place of A, if recalled; Candidates for the place of B, if recalled,' etc., but the Commissioner or Commissioners whose recall is sought shall

not themselves be candidates upon such ballot. The name of any elector of the City shall be printed as a candidate for Commissioner at such recall election for the place of the Commissioner to be recalled when a petition in substantially the form provided in Section 7, of this charter, shall be filed in his behalf with the City Clerk, and such petition shall have been signed by at least three per cent. (3%) of the total number of registered voters in the municipality and filed with the City Clerk not less than fifteen (15) days before such recall election.

"In case a majority of those voting for and against the recall of any Commissioner shall vote in favor of recalling such official he shall be thereby removed, and in the event the candidate who receives the highest number of votes for his place shall be elected thereto for the balance of the unexpired term.

"If the Commissioner or Commissioners sought to be removed shall have resigned within ten (10) days after the receipt by the Commission of the Clerk's certificate referred to in this section above the form of ballot at the election shall be the same, as nearly as may be, as the form in use at a regular municipal election.

"PROCEDURE ON REFUSAL OF COMMISSION.—Should the Commission fail or refuse to order an election as herein provided within the time required such election may be ordered by any State Court of general jurisdiction."

Also Section 12-A of Chapter 14234, Special Acts of 1929, provides as follows:

"No member of the City Commission shall be recalled or removed from office by the electors of this City, as provided in Section 12 of this Charter, unless twenty-five (25) qualified electors of this City shall make and file with the City Clerk an affidavit containing the name or names of the

Commissioner or Commissioners, whose removal is sought, and a statement of the grounds for removal. The Clerk shall thereupon deliver to the electors making such affidavit copies of petition blanks for such removal, and thereupon such further steps and proceedings shall be taken as are provided by said Section 12."

The initial affidavit, so it is alleged, contained the names of 28 qualified electors of the City of Miami and was drafted under the charter provision *supra*, and charged the plaintiffs John W. DuBose, Robert R. Williams and Ralph B. Ferguson, each Commissioners of the City of Miami, substantially as follows:

"1.   That said Commissioners, and each of them, have been indicted and now stand indicted by a Grand Jury of Dade County, Florida, for a crime against the State of Florida in connection with their duties and responsibilities as Commissioners of said City and for soliciting or attempting to exact a bribe.

"2.   That they, and each of them, have delayed, hindered and obstructed the prosecution of the appeal of the litigation now pending in the United States Court between the Florida Power and Light Company, a corporation, and said City, to the detriment of said City and its citizens.

"3.   That they, and each of them, have delayed, hindered and obstructed the prosecution of the appeal of the aforesaid litigation and have thereby delayed consumers of electricity in the City of Miami in obtaining refunds which, in said litigation, have been adjudged to be paid to the citizens of Miami.

"4.   That Thomas Grady, an employee of said City, has been indicted and now stands indicted by a Grand Jury of Dade County for a crime against the State of Florida in connection with his duties and responsibilities as an em-

ployee of said City in soliciting or attempting to exact a
bribe and that said City Commissioners have failed and re-
fused to discharge or cause to be discharged said Thomas
·Grady, or to bring any charges against or discharge or
cause to have discharged such officer or employee of the
City of Miami having supervision over the duties of said
Thomas Grady as a City employee.

"5.  That L. K. MacReynolds, an employee of said City,
or he and some other employee or employees of said City,
have sold thousands of dollars worth of farm produce and
fowls from a farm maintained by said City and have lost
or destroyed the records of said City so that how much was
sold and how much was realized from it and what became
of it, cannot be ascertained, and have kept in the office of
L. K. MacReynolds large sums of money which should
have been deposited in the City Treasury, and from said
large sums have illegally advanced money to said L. K.
MacReynolds and other City employees, and that said City
Commissioners have failed and refused to take any action,
although requested to do so, which would result in the dis-
charge of said L. K. MacReynolds, or any one responsible
for the above conditions as an employee or employees of
said City.

"6.  That although L. K. McReynolds has endorsed and
cashed checks made payable to the City of Miami without
any authority to do so, said City Commissioners have failed
and refused to take any action leading to the discharge of
said L. K. MacReynolds as an employee of said City.

"7.  That each of said Commissioners are and have
been incompetent, inefficient and derelict in their several
duties as such Commissioners and have lost the confidence
of the citizenship of said City, and it is to the best interest
of the City, its taxpayers and residents that said three Com-

missioners, and each of them, be recalled and removed as City Commissioners of said City."

The Honorable Paul D. Barns, a Judge of the Circuit Court of Dade County, upon due notice, and after a hearing of counsel for the respective parties, on April 26, 1938, made and entered an order denying plaintiffs' motion for a restraining order. The transcript of the record was perfected and the cause brought to this Court for a review on a number of assignments of error, with an application simultaneously for the issuance of a constitutional writ.

Among the first questions for consideration is that the initial affidavit containing the names of 28 qualified electors of the City of Miami fails to comply with the charter provisions of the City of Miami because (a) the grounds for removal as stated were not sworn to as being true; (b) one of the affiants was not an elector of the city; (c) five of the affiants did not swear to the truth thereof in the presence of a notary; (d) two of the affiants had moved to different voting precincts; (e) the affidavit requires a petition for each Commissioner. Other grounds appear, but are unnecessary to set forth. The charter provides that any qualified elector of the City of Miami may make and file with the Clerk an affidavit containing the name or names of the Commissioner or Commissioners whose removal is desired or sought and a statement of the grounds for the removal. Section 12-a, as amended, provided that no member of the City Commission can be recalled or removed unless 25 qualified electors of said City should file with the City Clerk an affidavit containing the name or names of the Commissioner or Commissioners of said City sought to be removed, with a statement of the grounds of removal. The Legislature of Florida, under Section 8 of Article 8 of the Constitution of Florida, had the power to enact the char-

ter, *supra,* and the policy, wisdom or reasons therefor cannot be inquired into by this Court.

It was manifestly the intention of the Legislature to permit or allow the electors of the City of Miami to recall or. remove not only one Commissioner but Commissioners of said City when there is a substantial compliance with the said charter. The fact that the name or names of more than one of the City Commissioners of said City appeared in the initial affidavit does not render the affidavit void but the same is in harmony with the charter and fully authorized.

Several questions of fact were raised in the lower court which were directed to the legal sufficiency of the initial affidavit. An important one was whether or not the persons whose names appear on the affidavit made oath thereto. The acknowledging notary was Arthur Keller, who was offered as a witness and heard by the lower court, and, as set out in the record, is as follows:

"He stated his name and that he was the notary public who took the oath as appears from the copy of an affidavit attached to the bill of complaint as Exhibit '1'; that each of the signers of such affidavit 'made oath' before him thereto.

"Q. Did you read the affidavit to each of them?

"A. No—

"Q. Did they read it?

"A. I presume they did. It was there for them to read. I read it to some of them; I handed it to the others to read.

"Q. Did they make oath to it?

"A. Yes."

It cannot be overlooked that if the affiants had never been sworn or made oath to the affidavit the proceedings would be void. If the lower court had been in doubt about this

point, he doubtless would have immediately issued a restraining order. It can be assumed on this record that each of the 25 affiants made oath to the affidavit and that the same was regular and did not violate the spirit or letter of the charter. This Court cannot reverse the findings of a Chancellor on facts unless it has been made to appear that the findings are clearly erroneous. Helland v. Evans, 113 Fla. 839; 152 So. 623; also McDonald v. McDonald Holding Corp., 122 Fla. 115, 165 So. 365.

It is next contended that the recall petition issued by the Clerk is void because: (a) it fails to have the names of persons to whom it issued; (b) the petitions or names thereon were checked by persons other than the Clerk; (c) the grounds for recall fail to appear on the petition; (d) separate petitions for each Commissioner sought to be recalled should have been circulated; (e) other reasons are assigned but unnecessary to set forth.

We have examined the recall petition identified as plaintiff's Exhibit Two and have checked the same with the charter, *supra,* making it the duty of the Clerk to keep on hand printed forms of recall petitions and when the initial affidavit is filed with him, to deliver to the elector making the affidavit said petition signed, with his official seal attached, the name of the person or persons whose removal is sought and the office from which the removal is sought or desired. It appears that a substantial compliance with the charter was made by the City Clerk.

It is contended that under the charter separate petitions should have been issued for each Commissioner. The case of Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324, is relied upon where a bond election was held and seven separate, distinct, and unrelated objects for a bond issue were submitted to the electors to be voted for or against as a single question. It is clear that the electors were deprived

of the privilege of voting for or against each of the seven items by requiring them to vote for or against the seven. It is difficult to appreciate the materiality of this citation.

The Supreme Court of the State of Washington in the case of McCush v. Pratt, 113 Wash. 7, 192 Pac. 964, had before it the question of whether under the Constitution and statutes of Washington public officers could be *jointly* recalled, or whether it was necessary that a separate petition for a recall for *each* officer should be circulated. The Court held that joint petitions could not be circulated but separate petitions were required. The constitutional and statutory provisions for recall of the State of Washington designated "public officer," while the charter of the City of Miami provides for "Commissioner or Commissioners."

The case of State, *ex rel.* Brown, v. Howell, 134 Tenn. 93, 183 S. W. 517, cited by appellant was a mandamus suit to compel proceedings on a petition held to be unauthorized and void under a statute providing that the Mayor or any Commissioner elected by the people under its terms and provisions * * * may be removed from such office by the qualified voters of the City. All the way through it grants authority to proceed against the officer sought to be removed and nowhere indicates that the method may be proceeded with against a number of officials jointly. See Priv. Acts 1913, Chapter 22, par. 32. The recall petition seeking to remove more than one officer was drafted under the provision for the recall of the "Mayor or any Commissioner" elected by the people may be removed and certainly a joinder of each in one petition for recall violated the spirit and meaning of the Act.

The case of Bricker v. Banks, a recent California case reported in 98 Cal. App. 87, 276 Pac. 399, likewise cited by counsel for appellant, as a mandamus proceeding to re-

quire the clerk to certify and file two recall petitions, one for the recall of a City Councilman and the other for the recall of four City Councilmen. The charter relating to the recall of officers used the *singular number* throughout. There was required a petition of recall for *each* officer sought to be recalled. The statute in the case at bar *expressly requires* the names of the "Commissioner or Commissioners" sought to be recalled to be placed on the petition and the bill of complaint seeks a temporary injunction or restraining order on a recall petition expressly authorized by the statute. The court below by denying the restraining order, held that the charter, *supra,* expressly or specifically required the names of the officer or officers sought to be recalled to not only appear in the recall petition but the elector at the polls had the opportunity to vote for or against, separately, any officer or officers at the recall election. It is clear that this method fully protects and secures the rights of the "Commissioner or Commissioners sought to be recalled and no property right of the plaintiff is shown to be violated by the charter, *supra,* or by its operation. This Court is without authority to change, alter, or amend the charter, but to construe it as enacted and it must control in the absence of a showing that it deprives the plaintiff of property rights without due process of law or otherwise violates the constitutional rights of the plaintiff. See State, *ex rel.* Landis, v. Tedder, 106 Fla. 140, 143 So. 148.

It is next contended that the Clerk of the City of Miami was without authority at law to check the names appearing on the recall petition against the registration books or lists of the City and decide whether or not the petitioner or petitioners were qualified electors of the City of Miami. The petitions contained several thousand names and ten days were allowed by the charter so to do. It appears that it was impossible for the clerk to in person perform the

task within the time allowed by the statute. As the law does not require the impossible to be done, and as the official duty had to be performed within ten days, the City Clerk was by the intendments of the statute authorized to use assistants in ascertaining the number of the qualified signers of the recall petitions containing thousands of names to be compared with the signatures on the city registration rolls. This is necessarily the proper interpretation of the statute which does not expressly or by fair implication make the duty imposed upon the city clerk a non-delegable function, nor expressly or by fair implication require the city clerk to perform the function in person or forbid the employment by the clerk of assistants *to enable him to perform the duty within the time limited by statute,* the clerk being officially responsible for the proper performance of the task assigned to him.

In State of Florida v. Sullivan, 95 Fla. 207, 116 So. 255, this Court in construing a statute said:

"In statutory construction, legislative intent is the pole star by which we must be guided and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well settled canons of construction. The primary purpose designated should determine the force and effect of the words used in the Act and no literal interpretation should be given that leads to an unreasonable or ridiculous conclusion or a purpose not designated by the lawmakers. Davis v. Florida Power Co., 64 Fla. 246, 60 So. 759; Willis v. Special Road & Bridge District, 73 Fla. 446, 74 So. 495; State, *ex rel.* Luning, v. Johnson, 71 Fla. 363, 72 So. 477; Curry v. Lehman, 55 Fla. 847, 47 So. 18; Payne v. Payne, 82 Fla. 219, 89 So. 538; Axtell v. Smedley & Rogers Hardware Co., 59 Fla. 431, 52 So. 710."

It is contended that reversible error occurred when the lower court made and entered an order allowing Harry J. Tryon to intervene in the cause, and that he did not have such an interest in the subject matter of the litigation permitting him to be made a party as authorized by Section 9 of the 1931 Chancery Act. The petition to intervene represented that Harry J. Tryon was a citizen, taxpayer, and qualified elector of the City of Miami; that he had signed the recall petition then before the lower court and claimed a direct interest in the result and outcome thereof; that the defendant Clerk of the City of Miami was employed by a majority vote of the five City Commissioners of Miami; that the Clerk of the City in the suit at bar would be represented by counsel of the selection of the. Commissioners and who had employment only at the will and pleasure of the Commissioners. It was imperative that counsel other than the selections or employment of the Commissioners should handle the suit at bar. It appears that Harry J. Tryon came within the rule prescribed by Section 9 of the 1931 Chancery Act and the order allowing him to intervene was without error.

We have formerly held that a public office is a public trust and that the incumbent has property rights therein, not subject to barter or sale, but for the benefit of society of which he is a member. The right to possess and enjoy the emoluments or the profits of an office is one clearly subject to judicial protection. We have been committed to the doctrine that a public officer has a property right in his office and cannot be deprived thereof without due process of law. See State, *ex rel.* Hatton, v. Joughin, 103 Fla. 877, 138 S. 392. Likewise, any person who is elected or appointed to an office is presumed to accept the same with the condition annexed that his tenure of the office may be terminated at any time in the manner prescribed by the

charter.. See Matter of Carter, 141 Cal. 320, 74 Pac. 997. The petitioner here accepted the office with the recall provisions prescribed by the Miami charter and the right in his office is not affected by the qualified electors enforcing the provisions of the charter.

A recall election is a special, extraordinary and unusual proceeding. The authority for any recall of an officer or officers must rest upon a substantial compliance with the statutory provision by which it is authorized. See State, ex rel. Landis, v. Tedder, *supra.* The burden of showing that the recall proceedings in the case at bar were not a substantial compliance with the charter, *supra,* rested with the plaintiff. If such a showing had been made the duty of the Court to enter a restraining order was clear. The lower court in denying the application for an injunction or temporary restraining order was of the opinion that the proceeding for the recall under the charter had been substantially complied with. If the plaintiff was aggrieved because the names of the three Commissioners were placed on each recall petition as required by the statute, he could have tested the validity of the statute in proceedings to require separate petitions as to himself, but this was not done. The petitions as prepared are in accordance with the statute; and as the statute is not shown to be invalid, the plaintiff has no legal or just ground to ask that the entire recall proceeding be enjoined.

We have carefully examined each point raised by counsel in this cause and have failed to find reversible error. We are of the opinion that the order appealed from should be affirmed. It is so ordered.

WHITFIELD and TERRELL, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—I cannot concur in the opinion prepared by Mr. Justice CHAPMAN.

An affidavit made and filed by twenty-five qualified electors of the city is a jurisdictional requirement as the basis for the circulation of recall petitions. An affidavit is not made unless an oath is administered by an officer duly authorized to administer oaths. Four of those who signed the alleged affidavits swore that they did not swear to the truth of the contents of the alleged affidavit before any officer authorized to administer oaths. The notary public who purported to have administered the oaths to the signers of the purported affidavit did not testify in the court below that he administered an oath to either of these four persons. The administration of and the making of an oath is a solemn matter and is not accomplished by the mere signing of a paper writing, to which a jurat is attached. There must be also the administration of an oath by a duly authorized officer and a taking and making of such oath by the affiant.

The testimony given by Mr. Keller in the court below was not sufficient to overcome the positive evidence given by the subscribers that they did not make oath to the truth of the contents of the purported affidavits.

We are definitely committed to the doctrine that a public officer has a property right in his office and cannot be deprived of it without due process of law. (State, ex rel. Hatton, v. Joughin, 103 Fla. 877, 138 So. 392) and also that officers may invoke judicial proceedings to protect their rights. See State, ex rel. Landis, v. Tedder, 106 Fla. 140, 143 So. 148.

We are also definitely committed to the doctrine that the recall statutes must be strictly complied with. Platt v. Ross, 112 Fla. 596, 150 So. 716.

I think that the contention that there must be a separate petition as to each of the officers sought to be recalled is well founded because the recall affects the property right of each officer in the office held by him and it is elementary that the property right of one individual may not be determined by the property right of another individual where all have different rights affecting different properties. So it is that although the statute is amenable to the construction placed upon it in the majority opinion, to give it that construction would be to violate the protection of due process. · For instance, a qualified elector might be so convinced that John Doe should be recalled from office, that to procure Doe's recall he would sign a petition which would also authorize an election for the recall of Richard Roe when he believed that Richard Roe should not be recalled and, therefore, would make it possibe to have an election for the recall of Richard Roe when Richard Roe had done nothing to forfeit his property rights in the office held by him. .

In the case of State, *ex rel.* Brown, *et al.,* v. Howell, *et al.,* 134 Tenn. 93, 183 S. W. 571, the Supreme Court of Tennessee said:

"The petition signed by voters constitutes so to speak, the pleading or indictment initiatory to remove an official. It should be directed against a single individual for the reason, first as we think, that it is so contemplated by the act of the Legislature granting this remedy in the city charter. The Act starts out with the provision that the mayor or any commissioner elected by the people under the terms and provisions of this Act may be removed from such office by the qualified voters of the city. All the way through it grants authority to proceed against an officer sought to be removed, and nowhere indicates that the

method may be proceeded with against a number of officials jointly. See Priv. Act 1913, ch. 22, Sec. 32.

"The impropriety and injustice of proceeding against a number of persons in one petition is manifest. It is subject to objection on the ground that a voter, when presented with the petition, must judge as to the question of whether he shall ask for a removal of a number of men or else submit to the retention in office of all. He is not given the clear-cut right to pass on each individual and exercise his own individual judgment as to that particular person. The fact that the petition stated the same cause of removal against all does not cure it of this objection. The voter ought to have the right to judge singly against each officer if he so desires. The Legislature evidently so intended.

"The same right to exercise independent judgment on each separate official must exist in the initiatory step of removal, as effectively as that the voter may so exercise at the ballot box his right and duty to elect a new official or recall an old one. As well might it be said that the voter shall be compelled to vote for a number of men jointly and be denied the right to vote as to each one singly, as to say he may not judge of the propriety of holding in office each individual official who had been previously elected.

"The official also should have the right to be judged alone by his fellow citizens as to his own merits or demerits. That the law-making body so intended in providing the recall, we have no doubt. To construe it otherwise would be to attribute to the Legislature the enactment of an unwise and intolerable law."

It is true that the statute under which the recall was proposed indicated that the recall petition should apply to a single officer but the reasoning of the court shows that it should be applied to a single officer although the statute

might be amenable to another construction. In that case the Court further said:

"We have been furnished with no citation showing that any State has permitted the practice of including in the petition for recall a number of officials to be considered jointly."

The manifest injustice and violation of due process has been so clear that it appears no other state has attempted to authorize recall petitions to include the name of more than one officer. In McCush v. Pratt, etc., 113 Wash. 7, the same reasoning was followed as that enunciated by the Tennessee court.

To like effect is the case of Bricker v. Banks, as City Clerk, et al., 98 Cal. Appellate Reports 87.

So it is my opinion that the statutes here involved must be construed to require a separate petition applying to each officer sought to be recalled and that to include all officers sought to be recalled or several officers sought to be recalled, in one petition as definitely violates the due process clauses of the State and Federal Constitutions as they would be violated by the attempt to require the elector to vote for or against the recall of two or more officers by one vote and not allowing each officer to be judged separately on his merits or demerits. Each of the officers involved has an individual separate right of property of which he is sought to be deprived and any procedure which commingles his right to enjoy that property right with the right of another to enjoy a property right vested in that other must be deemed a violation of the constitutional rights of both.

Perhaps it is true that if the temporary restraining order had been granted and the proponents of the recall had been required to start over and to proceed in accordance with the statutes in such cases made and provided the result in

the end would have been the same. But, we are dealing with questions of law and not with political results and we are determining property rights and dealing with the procedure by which one may in conformity with constitutional rights be deprived of the same.

To have granted the temporary restraining order would not have deprived the proponents of the recall from proceeding lawfully in the effort to deprive the officers involved of their respective offices. But to deny the restraining order allows the proponents of the recall to proceed against the officers in such a manner as to, within the range of probability, deprive one or more of such officers of his property rights in the office because of conditions for which he was in nowise responsible and which were chargeable only to other officers who might be named in the same petition for recall with him.

Therefore, I think, for the reasons stated, the restraining order should have been granted.