FRINK J. KELLY, as City Clerk of the City of Miami, v. STATE, *ex rel.* HARRY J. TRYON, a citizen, qualified elector and taxpayer of the City of Miami, and one of the signers of the petition hereinafter mentioned, suing in his own behalf in behalf of all other persons similarly situated.

185 So. 157.
Opinion Filed December 14, 1938.

*J. W. Watson, Jr.,* and *E. E. P. Brigham,* for Plaintiff in Error;

*George E. McCaskill* and *Abe Aronovitz,* for Defendant in Error.

PER CURIAM.—This case is here for a review on writ of error to a final judgment or peremptory writ of mandamus entered on the 22nd day of April, 1938, by the Circuit Court of Dade County, Florida. The case presents three separate and distinct questions arising under Chapter 10847, Special Acts of 1925, being the Charter of the City of Miami, and involves the procedure for a recall election thereunder. This Court has, from time to time, passed upon and decided different questions controlling the recall procedure under the charter and ordinances of said City, and the cases so decided are reported, viz.: Du Bose v. Kelly, 132 Fla. 548, 181 So. 11; Williams v. Kelly, 133 Fla. 244, 182 So. 881; State, *ex rel.* Gibbs, v. Bloodworth, 134 Fla. 184 So. 1.

The first question for consideration is: Where the City

Charter of Miami makes it the duty of the City Clerk in recall proceedings of City Commissioners to ascertain whether the recall petition is signed by the requisite number, or 15% of the registered voters as shown by the City Registration Books, may such Clerk determine that a signature to said petition is unlawful or insufficient because the place of residence stated thereon falls in a voting precinct where such person is not registered, but whose name does appear on the registration books of said City in some other voting precinct?

It was made to appear that blank petitions had been circulated and signed by a large number of voters seeking a recall election as provided by Section 12 of Chapter 10847, Special Acts of 1925, and after the same had been returned to the office of the City Clerk it then became his duty to ascertain if the petition or petitions contained a sufficient number of registered voters of said City as required by the Charter to call an election to determine whether or not the said City Commissioners should be removed or recalled, and if a sufficient number of registered voters of said City appeared on the petitions it then and there became the duty to so certify to the City Commission. It becomes necessary to determine from the charter and ordinances of the City of Miami the qualification of a registered voter. Section 8 of Chapter 10847, *supra*, provides:

"Any person who shall possess the qualifications requisite to an elector at a general state election, and shall have resided in the City six months next preceding the City election at which he offers to vote, and shall have registered in the City Registration Books that shall be prescribed by ordinance, shall be a qualified elector of the City. * * * "

It is clear that when an elector registers in the City of Miami and subsequent thereto moves or changes his place of residence to some other voting precinct of the City of

Miami he should not lose his right to vote because Section 14 of Ordinance No. 536 provides:

"That in case of the removal of an elector from one election precinct to another election precinct in said City, such elector shall notify the Deputy Supervisor of Registration of the precinct from which he removed, of such change of residence, and said Deputy Supervisor of Registration shall thereupon cancel the registration of such elector in his registration book and shall give such elector a certificate of transfer of registration to the election precinct in which such elector then resides, and upon presentation of such certificate of transfer of registration to the Deputy Supervisor of Registration of the precinct in which the elector then resides, said Deputy Supervisor of Registration shall enter the name of such elector upon his registration book; provided, however, that no transfer of registration shall be made except during the time when the registration books of the City shall be open."

The Charter and Ordinance of the City of Miami, *supra,* fully authorize the Clerk to determine the eligibility of the voters of the City of Miami by comparing, checking, and examining the names appearing on the petitions with the registrations books, poll books, and card index record, and other sources of information that would throw light on the legal qualifications of the registered voters, because it becomes his duty as Clerk to certify as to the correctness of 15% of the registered voters as shown by the City Registration Books. This assignment is without merit.

The second question for consideration is: Where the Charter of the City of Miami makes it the duty of the City Clerk to ascertain whether or not a recall petition of City Commissioners duly filed in his office is signed by the requisite number of 15% of the registered voters of the City as shown by the registration books, and said Charter

further requires that there shall be added to each signature on said recall petition the street and number, or the description sufficient to identify the residence of the petitioner signing the recall petition, may the City Clerk, in order to prevent fraud, ascertain whether or not the signatures on such recall petition are forgeries by comparison of them with the City Registration Books signed by the voters, irrespective of whether or not the circulator of the recall petition has appended to same his affidavit that the signatures appearing on said recall petition are genuine?

This Court had before it a similar question in the case of Du Bose v. Kelly, *supra,* when it said:

" 'Examination and Amendment of Recall Petitions.— Within ten (10) days after the filing of the petition the Clerk shall ascertain whether or not the petition is signed by the requisite number of registered voters and shall attach thereto his certificate showing the result of such examination. If his certificate shows the petition to be insufficient, he shall forthwith so notify in writing one (1) or more of the persons designated on the petition as filing the same; and the petition may be amended at any time within ten (10) days, after the giving of said notice, by the filing of a supplementary petition upon additional petition papers, issued, signed and filed as provided herein for the original petition. The Clerk shall, within ten days after such amendment, make like examination of the amended petition, and attach thereto his certificate of the result. If then found to be insufficient, or if no amendment was made he shall file the petition in his office and shall notify each of the persons designated thereon as filing it of that fact. The final finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.' * * *

"It is next contended that the clerk of the city of Miami was without authority at law to check the names appearing

on the recall petition against the registration books or lists of the city and decide whether or not the petitioner or petitioners were qualified electors of the city of Miami. The petitions contained several thousand names and ten days were allowed by the charter so to do. It appears that it was impossible for the clerk to in person perform the task within the time allowed by the statute. As the law does not require the impossible to be done and as the official duty had to be performed within ten days, the city clerk was by the intendments of the statute authorized to use assistants in ascertaining the number of the qualified signers of the recall petitions containing thousands of names to be compared with the signatures on the city registration rolls. This is necessarily the proper interpretation of the statute which does not expressly or by fair implication make the duty imposed upon the city clerk a nondelegable function, nor expressly or by fair implication require the city clerk to perform the function in person or forbid the employment by the clerk of assistants *to enable him to perform the duty within the time limited by statute,* the clerk being officially responsible for the proper performance of the task assigned to him."

It is positive that the provisions of Section 12, *supra,* did not require the Clerk of the City of Miami to pass upon questions of fraud, forged signatures, or other evidences of improper conduct in obtaining names on the petitions to which the circulator had appended his affidavit of genuineness of the signatures. There was no error in this ruling by the lower court.

The third question for consideration is: Where a recall petition of City Commissioners of the City of Miami is duly filed with the City Clerk, whose duty it is to ascertain whether or not said recall petition is signed by the requisite 15% of the registered voters of the City, as shown by the

registration books of the City, and prior to the ascertainment by said Clerk of the sufficiency of the required number of names of registered voters on said petition, may registered voters who have signed said recall petition properly withdraw their names from the same by filing with the City Clerk written requests to that effect?

It is admitted here that the Miami Charter makes no provision for withdrawal of names of registered voters when once placed on a recall petition. It is contended by counsel for plaintiff in error that this right and privilege exists independently of the Charter at any time prior to the Clerk's certificate being delivered to the City Commission. The peremptory writ commanded that the Clerk disregard affidavits or requests of all persons for their withdrawal of names appearing on the recall petitions unless such person or persons should appear before the Clerk and make an oath to the effect that he did not intend to sign or did not know that he signed the said petition for recall, or that he does now withdraw his name therefrom or request that it be stricken therefrom. It appears that this ruling is in harmony with the views expressed in a concurring opinion filed by the late Mr. Justice DAVIS in the case of City of Avon Park v. State, ex rel. Wolff, 108 Fla. 419, 146 So. 188.

This Court in the case of State, ex rel. Landis, v. Tedder, 106 Fla. 140, 143 So. 148, had before it the Charter of the City of Hollywood, Florida, containing a recall provision to the effect, viz., that when a petition was circulated among the registered voters of the city seeking a recall of one of its Commissioners, and when the requisite number of names were obtained to the recall petition, it was then filed with the City Clerk, who in turn advised the Commissioner sought to be recalled that on a certain date he would submit the recall petition with his certificate to the City Commission to be used by it as a basis for ordering a recall election

against the Commissioner complained of, when the following language was used:

"The charter provides that if a petition for recall be certified by the city clerk to have the requisite signatures of the specified number of registered voters of the City, that the city clerk shall submit said petition, with his certificate thereon, to the Commission at its next meeting, and shall notify the Commissioner, or Commissioners, whose recall is sought, of such action. The charter further provides that the Commission shall thereupon, within ten days of the receipt of the clerk's certificate, order an election to be held not later than fifteen nor more than thirty days thereafter. It will thus be seen that once the petition, properly certified to by the city clerk, is filed with the City Commission that the Commission has no alternative but to order the election which the statute requires to be held thereon."

An examination of authorities from other jurisdictions, where no statutory powers exist controlling the right or privilege of a voter to withdraw his name subsequent to the delivery of the recall petition to the Clerk, and prior to the certification thereof, a voter cannot do so except by personal appearance before the City Clerk.

The controlling cases are:

In Bordwell v. Dillis, 70 Ark. 175, 66 S. W. 646, text page 647, that Court said:

"Before the filing with the Clerk * * * the petition is in the power of the signers. Each signer may control his signature. It is not yet a petition in which the public is interested. * * * But when the petition has been filed * * * the public has now become interested in it. The jurisdiction of the subject matter has now attached. In the absence of something in the statute permitting it, no individual signer, nor, indeed, all of the signers, could thereafter withdraw or erase their names from the petition * * * He who

voluntarily sets on foot a proceeding for the enforcement of a salutary police regulation in any community, should not be permitted to capriciously undo his work. He should not be allowed to play fast and loose with the interests of society. The law makes no provision for protests and remonstrances for signing and countersigning; it only provides for the petition."

In Beecham v. Burns, 34 Cal. 754, 168 Pac. 1058, it was said: "The Clerk is not clothed with authority to alter the petition when it has been filed: He is not authorized to receive extraneous evidence of its contents, or to base his certificate upon statements made to him by electors who have signed it. His certificate must show the result of an examination, whereby 'from the records of registration,' he shall ascertain whether or not 'said petition' is signed by the requisite number of qualified voters. In our opinion, the signers of such petitions may not withdraw their names, or have their names withdrawn by the Clerk at any time after the petition has been filed."

In Seibert v. Lovell, 92 Iowa 507, 61 N. W. 197, that Court said: "We hold then that the question of jurisdiction is to be determined from the petition as it was when filed, and without regard to the subsequent acts of the petitioners. * * * The power to act having been conferred upon the Board by virtue of a legal petition, it could not be impaired or taken away by the protests, remonstrances, or the attempted withdrawals of some of the petitioners."

In State, *ex rel.* Matzdorf, v. Scott, 52 Nev. 216, 285 Pac. 511, the Court said:

"It is insisted that the withdrawals from the petitions, after they were filed, of the one hundred signatures as alleged in the answers were legally effected, which left the petitions without the required number of signers, and thereby deprived the Clerk of authority to call an election.

We cannot agree with that view. We are aware of cases of this and analogous character recognizing the right of withdrawal from a petition after it has been filed, if exercised before final action is taken thereon by the officer or board to whom it is addressed, but these have generally been governed by provisions of law differing from our constitutional provisions providing for the recall and aiding statute. Insofar as it has been held under similar provisions that a petitioner may withdraw from the petition after it has been filed, we cannot agree with the ruling. Neither the recall amendment nor the statute pursuant thereto, make any provision for such a contingency. They provide only for a petition with certain requirements. The Clerk is given no authority to consider or determine matters outside of the petition * * * As nothing further has been prescribed by the constitution or statute as a condition precedent to the calling of an election by the Clerk, his power and duty to act in conformity with the mandate of the law attached when the petitions were filed."

See also Gerber v. Board of Commrs. of Wright County, 89 Minn. 351, 94 N. W. 886.

We have carefully examined the entire record, briefs of counsel and authorities cited, heard arguments of the bar of this Court and hold that there is no error in the record. The judgment appealed from is affirmed. It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, CHAPMAN, and THOMAS, J. J., concur.