ROBERT R. WILLIAMS v. FRANK J. KELLY, as City Clerk, *et al.*

182 So. 881.
Opinion Filed May 14, 1938.
On Rehearing July 8, 1938.

*Casey Walton & Spain, Pine & Giblin, Marion E. Sibley, R. R. Rhudy* and *J. Velma Keen,* and *Whitfield & Whitfield,* for Appellant;

*J. W. Watson, Jr.,* and *E. F. P. Brigham,* for Appellee Kelly;

*George E. McCaskill, Abe Arnovitz* and *James Messer, Jr.,* for Intervenor, Tryon.

PER CURIAM.—It appears that under the charter statute of the City of Miami, proceedings were instituted for the recall and removal from office of three of the five City Commissioners of the City. An injunction was sought by one of the Commissioners whose recall was petitioned for, and several of the matters now presented were adjudicated in that case. See Dubose v. Kelly, filed here May 6, 1938. Some matters not adjudicated in that case are presented in this suit brought by another of the three Commissioners whose recall is sought.

In the Dubose case it was again held that a public officer has a property right in his office and cannot be deprived of it without due process of law. It was also held that any person who is elected or appointed to a public office accepts it with the condition annexed that his tenure of office may be terminated as may be duly provided by law; and that the removal from office by a recall election must rest upon a substantial compliance with the statutory provisions authorizing such recall. Dubose v. Kelly, 132 Fla. 548, 181 So. 11.

The organic requirements of due process of law are controlling when life, liberty or property rights are involved in *any official action,* whether such action be the exercise of "the powers of government" by those "properly belonging"

to the governmental departments respectively as divided and limited by the Constitution, or whether the action is a duly authorized administrative or ministerial function or duty.

While the "powers of government," that are divided and limited by the Constitution cannot legally be delegated or exercised except as authorized by the Constitution, yet valid and appropriate statutes may, within organic limitations, confer upon officers or commissions or boards, administrative or ministerial authority and duties, which may require the exercise of administrative discretion and judgment. But in all cases when the rights of life, liberty or property are materially affected by the exercise of official administrative or ministerial discretion and judgment, due process of law must be afforded; and the proceedings *must* accord with valid statutory requirements; for such proceedings have a legal basis only in a compliance with valid statutory provisions conferring the authority. The official act is authorized *only* when the material provisions of the statute authorizing or regulating the action are obeyed.

The charter statute enacts that "No member of the City Commission shall be recalled or removed from office by the electors of this City, as provided in Section 12 of this Charter, unless twenty-five (25) qualified electors of the City shall make and file with the City Clerk an affidavit containing the name or names of the Commissioner or Commissioners, whose removal is sought, and a statement of the grounds for removal."

It is in effect alleged in the bill of complaint that the recall "affidavit purports to have been made by twenty-eight 'qualified' electors of the said City; that "said purported affidavit was and is null and void as a jurisdictional prerequisite, predicate or basis of authority for the issuance or delivery" of the recall petition blanks. The reasons

alleged for the stated conclusions are that, because of stated detailed facts, the purported affidavit was made by less than twenty-five "qualified" electors of the City in that three named makers of the affidavit, including F. N. Thomas, were not "qualified" electors of the City; and in that five other named purported makers of the affidavit, including F. N. Thomas, "did not swear or make oath to the said purported affidavit, or to the truth thereof, or to the truth of any or either of the matters therein set out, before or in the presence of the Notary Public whose purported jurat is thereto attached, or before or in the presence of any other officer authorized by law to administer an oath."

The copy of the affidavit in the transcript shows 28 names of persons including the five referred to in the bill of complaint as not having sworn to the affidavit. The street address of each person appears opposite his or her name. It is not alleged that the five persons were not qualified electors of the City, or that they did not sign the affidavit, or that the plaintiff was present when the five persons signed the affidavit and that no oath was administered or taken. The allegation that the five persons did not make oath to the affidavit was, in the bill of complaint, sworn to by the plaintiff; but such allegation is not supported by affidavits or testimony by the five persons or any of them that they did not swear to the affidavit or that they did not appear before the officer to make the oath or that they did not sign the affidavit.

The plaintiff moved for a temporary injunction on the bill of complaint, when filed, notice being given. The defendant merely resisted the motion. There was no answer or motion to dismiss the bill of complaint for want of equity. The affidavit being signed by the five persons who it is alleged did not swear to it, and the officer having affixed his jurat and seal thereto, and there being no allega-

tion that the five persons did not sign the affidavit, and no affidavit or testimony to support the allegation that the five persons did not make oath to the affidavit, the legal effect of the official jurat under seal is not overcome by the allegations. On this record the jurat of the Notary Public is not legally shown to be false.

It is alleged that one person whose name is among the 28 signatures to the recall affidavit was not a qualified elector of the City. If this be true, 27 names remain as makers of the recall affidavit. Only 25 are needed. Two other persons, F. N. Thomas and Mrs. Martha Bell, appear to have been qualified electors of the City, even though they had changed their residence from one district or precinct of the City to another district or precinct within the City.

There are allegations of fraud on the part of the Notary Public in affixing his jurat to the affidavit, but such allegations have relation to the alleged failure of the five persons to make oath to the affidavit signed by them. As this cause is to be remanded for further proceedings, the entire matter may be further developed by appropriate pleading and evidence.

There are allegations of deception in the use of the recall petitions to secure signatures thereto, that are legally sufficient to require responsive pleading and evidence on that subject.

The statute requires a copy of the recall petition to "be *entered in a record book* to be kept in the office of the Clerk." To be entered in a book means to be recorded in the book. It appears that this has not been done and, upon a remand of the cause, the court below should not proceed further until the statute is obeyed. The statutory provision is designed to provide a permanent record of the institution of the recall proceedings, all the other proceedings being merely filed in the office of the City Clerk.

Another purpose of the statute is to afford a sufficient and reasonable constructive notice by a record book of the Clerk's office to the officials sought to be recalled. The plaintiff has waived his right to complain of the failure to make a record entry of the recall petition as issued for the purpose of giving him constructive notice of the institution of the recall proceedings, as he is challenging the subsequent recall proceedings. But he has a right to require the record entry to be made as a permanent official record of the institution of the recall proceedings against him.

The statute provides that the recall petition "shall be signed by registered voters of the City to the number of at least fifteen per cent. (15%) of the total number of registered voters of the City as shown by the City registration books."

Nothing in the terms or intendments of the statute forbid the use of card indices or other appropriate means or instrumentalities for correctly ascertaining the "registered voters of the City"; but the ultimate factor to be used in determining whether recall petitions are signed by at least fifteen per cent. (15%) of the total number of the registered voters of the City is "the total number of registered voters of the City as shown by the City registration books." Of course, the City registration books must be so kept as to show only the qualified registered voters of the City at the time such registration books are being used as the statutory means to show "the total number of registered voters of the City."

In further proceedings it may be shown whether, in this respect, the statute has been obeyed as it must be.

It does not appear that a more extended discussion of the allegations of the bill of complaint is essential to the further progress of this cause.

The order appealed from is reversed and the cause is remanded for appropriate proceedings.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

BUFORD, J., concurs specially.

BUFORD, J. (concurring specially).—I concur in what is said in the foregoing opinion, but I construe the requirement that a copy of the recall petition "be entered in a record book to be kept in the office of the Clerk" to be an essential antecedent prerequisite to the circulation of the recall petitions and that the official sought to be recalled does not waive the necessity of that prerequisite by challenging either the antecedent or subsequent recall proceedings.

## ON REHEARING.

PER CURIAM.—The appeal in this case was taken May 10, 1938, from an order and decree entered by one of the Judges of the Circuit Court for Dade County, in Chancery sitting, denying a temporary injunction prayed for by the appellant, Williams, said order being dated May 9, 1938. The appeal from said order, together with transcript of record, was filed in this Court on May 11, 1938. The prayer for injunction was predicated upon the allegations in a bill in equity which had been filed by the appellant in the court below and prayed that the defendant, Kelly, as City Clerk of the City of Miami, be enjoined until the further order of the court from certifying that "the purported recall petition" had been or was signed by at least fifteen per cent. of the total number of registered voters of the said city, as shown by the city registration books of said city, and from certifying that the said purported recall petition had been signed by the requisite number of registered voters of said city, and from certifying that said pur-

ported recall petition was sufficient," and from taking any step or action of any kind pertaining to the said purported recall petition; and that upon final hearing the temporary restraining order be made permanent. From the order denying said temporary injunction as above prayed from this appeal, as above stated, was taken and lodged in this Court on May 11th. On that date, after notice and hearing accorded both appellant and appellees, this Court, in order to preserve the *status quo* until the appeal could be decided, granted a constitutional writ preventing the said city clerk from taking any of the steps thus sought to be enjoined, concerning or pertaining to said recall petition, "until the further order of this Court." Three days later this Court rendered its opinion and decision and reversed the order denying the temporary injunction and remanded the cause for "appropriate proceedings," meaning of course proceedings not inconsistent with the views expressed in the opinion.

In the Court's opinion thus rendered, the questions raised by the appeal, which the Court deemed material, were all discussed. After due consideration upon rehearing of all the questions raised and ably argued by counsel for the respective parties, the Court does not see fit to depart from the opinion already rendered, but as the parties on both sides have asked for a rehearing, and have apparently placed different constructions upon the meaning of the language used in the opinion with regard to the proper test for correctly ascertaining the registered voters of the city by the clerk, and also as to whether or not the constitutional writ, commanding the clerk to take no further action pertaining to the recall proceedings, had been definitely set aside by the opinion and decision of the Court rendered May 14th, the Court has decided to restate its position so as to remove any misunderstanding. That part

of the opinion which counsel deemed should be clarified by the Court on this rehearing, reads as follows:

"The statute provided that the recall petition 'shall be signed by registered voters of the City to the number of at least fifteen per cent. (15%) of the total number of registered voters of the City as shown by the City registration books.' "

"Nothing in the terms or intendments of the statute forbid the use of card indices or other appropriate means or instrumentalities for correctly ascertaining the 'registered voters of the City'; but the ultimate factor to be used in determining whether recall petitions are signed by at least fifteen per cent. (15%) of the total number of the registered voters of the City is 'the total number of registered voters of the City as shown by the City registration books.' Of course, the City registration books must be so kept as to show only the qualified registered voters of the City at the time such registration books are being used as the statutory means to show 'the total number of registered voters of the City.'

"In further proceedings it may be shown whether, in this respect, the statute has been obeyed as it must be.

"It does not appear that a more extended discussion of the allegations of the bill of complaint is essential to the further progress of this cause.

"The order appealed from is reversed and the cause is remanded for appropriate proceedings."

It appears from the allegations of the bill of complaint filed by the appellant, Williams, that the total number of registered voters of the city as shown by the registration books was in excess of fifty-five thousand, fifteen per cent. of which would be eight thousand, two hundred and fifty; whereas the clerk had found that the petition had been

signed by five thousand, two hundred and sixty persons, as shown by his card index of voters and the purported type-written copies of the registration books, which he testified showed that there were only thirty-six thousand, three hundred and fifty-seven qualified electors of the City of Miami.

As we stated in our former opinion, there is nothing in the statute (the Charter Act) which forbids the use by the clerk of card indices as a means or aid in carrying out his statutory duty of correctly ascertaining the registered voters of the city, but it is perfectly apparent that such card indices are mere private records; that they are not mentioned in or required to be kept by the statute, and are not, therefore, public records upon which official action can be based. On the other hand, the statute plainly says that in ascertaining whether a petition for recall has been signed by the requisite proportion of registered voters, it must be ascertained and certified by the clerk that the petition has been signed by "at least fifteen per cent. of the total number of registered voters of the city" as shown by the registration books." This language is perfectly plain, and is clearly mandatory, and therefore we stated in our previous opinion that "the ultimate factor to be used in determining whether recall petitions are signed by at least fifteen per cent. of the total number of registered voters of the City is the total number of registered voters of the City as shown by the City registration books"; and we observed that the registration books "must be so kept as to show only the qualified registered voters of the city at the time such registration books are being used as the statutory means to show the total number of registered voters of the City."

It appears that the City ordinance required that the clerk should be the supervisor of registration and the custodian of the registration book for each election precinct, and that "whenever it should come to the knowledge of the super-

visor of registration that any elector has died or become disqualified to vote for any reason whatever, or that his right to vote has become affected in any way since his registration, it shall be the duty of the supervisor of registration to make a note of such fact on the proper registration book opposite the name of such person, and to mark off the names of such persons as have so ceased to be qualified electors by running a pen through the names of such persons on such books, and said supervisor of registration shall carefully note on said books the date of such erasure and the cause thereof."

It appears from allegations of the bill and from the testimony of the clerk taken at the time of hearing on application for temporary injunction that this provision, as to the striking from the registration books of the names of voters who have died or become disqualified, as set forth in the above ordinance, has never been complied with by the present clerk or his predecessors, but that the custom and practice has been to keep track of the disqualification of voters by the use of a card index system. There was nothing in the statute to prevent the use of a card index system for the convenience of the clerk as supervisor of registration in carrying out the plain intent and command of the ordinance, but the keeping of such card index system did not relieve the supervisor of registration from the duty of carrying out the command of said ordinance with regard to the striking of names from the registration books, so that the registration books themselves would correctly reflect the number of the qualified and registered voters of the city. But as the statute, the Charter Act of the City, requires the clerk to ascertain the required proportion of the names signing a recall petition to be based upon "the total number of registered voters of the City as shown by the registration books," the card index system cannot be used

as such basis. As we stated in our former opinion "the City registration books must be so kept as to show only the qualified registered voters of the City at the time such registration books are being used as the statutory means to show the total number of registered voters of the City." It follows, therefore, that although the registration books as they stood at the time this bill was filed may show the names of all the qualified voters of the City, it appears from the testimony of the clerk that no names have been stricken from said books since 1925, and that according to his card index system there are somewhere in the neighborhood of nineteen thousand names appearing on the registration books who have died or moved away or otherwise become disqualified.

In our former opinion we also stated that: "In further proceedings it may be shown whether, in this respect, the statute has been observed as it must be."

In making this statement the Court contemplated that the clerk should correct the registration books by striking therefrom in the manner required by the controlling ordinance, those names which are commanded to be stricken by the City ordinance so that said books shall show as of the date the petition was presented to the Clerk for Certification, only the qualified registered voters of the City at the time such registration books are being used as a statutory means showing "the total number of registered voters of the City."

Thus the language of the Court in its former opinion contemplated that the court below should grant the temporary injunction as prayed for by the appellant to the extent of restraining the clerk from certifying the recall petition until he shall have corrected the registration books as above outlined, in such form and manner as to comply with the City ordinance above referred to, so that the regis-

tration books will themselves show only *the qualified registered voters of the City,* in order that such registration books might then be fairly and correctly used as the statutory means of ascertaining whether or not the petitions and supplemental petitions for recall, referred to in our previous opinion, were signed by the requisite fifteen per cent. of the "total number of registered voters of the City as shown by the City registration books." Until this is done, the clerk cannot lawfully make the certificate as provided for by the plain language of the statute.

In reversing the order denying the temporary injunction and remanding the cause for appropriate proceedings, the Court impliedly vacated the constitutional writ which had been granted on May 11th to hold the case in *status quo* until this Court could render its decision. But inasmuch as there has been some misunderstanding on this point, the Court does now expressly adjudge that the said constitutional writ issued herein on May 11th is hereby set aside, and that the previous judgment of this Court that the order appealed from be reversed and the cause remanded for appropriate proceedings is hereby, on this rehearing, reaffirmed, with instructions that the mandate go down to the trial court forthwith.

Original judgment of reversal and remandment for further appropriate proceedings, reaffirmed on rehearing.

Whitfield, Brown and Chapman, J. J., concur.

Ellis, C. J., and Buford, J., dissent.

Buford, J. (dissenting).—I am unable to concur with the views expressed by a majority of the Court in the opinion prepared pursuant to rehearing. I adhere to the views expressed in my special concurring opinion filed herein with the original opinion. I agree to what is said in the opinion prepared pursuant to rehearing except that I cannot agree

with the view that the city Registration Books may, at this late day after the recall petitions have been circulated and returned, be now corrected by the Clerk so as to make them show the names of the registered voters of Miami. The record shows that for more than twelve years there has been no pretense of keeping the Registration Books in the manner required by law. The record shows that the Clerk does not know and has no way of ascertaining what names should be stricken from the Registration Books; that if he attempts to correct the books he must rely on private memoranda made by a third party which has no evidentiary value. Even if the maker of that memoranda is available, such information as he could give the Clerk would be hearsay.

As stated in the majority opinion, the ordinance requires that whenever it should "come to the knowledge of the supervisor of registration that any elector has died or become disqualified to vote for any reason whatever, or that his right to vote has become affected in any way since his registration, it shall be the duty of the supervisor of registration to make a note of such fact on the proper registration book opposite the name of such person, and to mark off the names of such persons as have so ceased to be qualified electors by running a pen through the names of such persons on such books, and said supervisor of registration shall carefully note on said books the date of such erasure and the cause thereof."

It is my view that the recall statute contemplates that the City Registration Book as it *exists at the time of the* circulation of and certainly *at the time of the return to the Clerk of the recall petitions* shall be the exclusive controlling evidence of the sufficiency of the number of names on such petitions. If the Registration Books did not truly show the number of registered voters in the City of Miami at the time the affidavits and applications for recall pe-

titions were filed, such Registration Books should have then been immediately corrected so as to truly show what they as public records purported to show, to the end that proponents and opponents of the recall would be advised by the record the minimum number of names required to authorize the calling of the Election. Without this, there existed no record by which the number of names required could be ascertained. See State v. Russell, 124 Wis. 548, 102 N. W. 1052.

The statute required the number of names to be 15% of the total number of names of registered voters as *shown* by the Registration Books of the City and did not authorize the calling of an election upon petitions being filed bearing the names of 15% of the total number of Registered voters of the City as might be shown by revising the Registration Books after the petitions should have been returned. Such provision would have opened the door wide for fraud and uncertainty and an adjudication that such procedure may be followed will have no less effect. Whether or not the fraud will in fact be practiced is not controlling. The fact that opportunity for the commission of fraud is afforded is sufficient to condemn such course.

If there is merit in the effort for recall, there can be no good reason why the proceedings to that end should not be regular in all respects and in conformity with the statutes. Everybody appears to agree that the proceedings have been markedly irregular and without conformity with statutory provisions relative to such matters.

ELLIS, C. J., concurs.