R. W. ARNOLD, N. W. SANDERS, and A. M. ALEXANDER, JR., as and Constituting the County Board of Public Instruction of Wakulla County, and BRYANT JONES, v. STATE *ex rel.* N. CULBREATH and JOHN GLASS.

190 So. 543
Opinion Filed August 8, 1939
Rehearing Denied September 29, 1939

*J. Lewis Hall, C. N. Ashmore* and *R. W. Ashmore, Jr.,* for Plaintiffs in Error.

*Julius F. Parker,* for Defendants in Error.

TERRELL, C. J.—On petition of relators, alternative writ of mandamus was directed to the Board of Public Instruction of Wakulla County commanding it to rescind a certain contract of employment made with Bryant Jones, and forthwith employ John Glass as bus driver of the St. Marks-Crawfordville route for the school term, 1938-1939, or to show cause why they refuse to do so.

A motion to quash the alternative writ was denied and a return was filed which was several times amended before issues were settled. Evidence was taken, motion for peremptory writ was granted and the present writ of error was prosecuted from the latter decree.

It is first contended that Chapter 16170, Acts of 1933, under which the contracts brought in question depended is unconstitutional in that the general grant of power therein to the State Board of Education is so broad as to amount to abdication on the part of the Legislature of its prerogative to legislate on the subject matter. It is, in other words, contended that Articles II and III of the Constitution are invaded by Section 1 of Chapter 16170 which is as follows:

There shall be, and there is hereby established in this State, as required by Section 1 of Article XII of the Constitution of the State of Florida and under the terms and provisions of this law and other applicable laws now in

force or hereafter enacted, a uniform system of free public schools in the State of Florida."

Section 1 is nothing more than a broad declaration of policy with reference to the establishment and support of a system of public free schools in this State. Other provisions of Chapter 16170 authorize the State Board of Education to promulgate rules and regulations to affect such a system. The present litigation grows out of Rule 8, and other rules promulgated under the Act, and so long as they are shown to conform to its general purpose, it will not be held to be in violation of the asserted provisions of the Constitution.

The test of validity in a case of this kind is whether or not the Act defines a pattern by which the rule or regulation must be made to conform. Such are the limits in which it must be canalized, so if the rule or regulation goes to the establishment and support of the public free school system, it is within the purview of the Act. We deem Chapter 16170 to be sufficient to withstand the test.

The constitutional question being out of the way, the remaining question presented is whether or not school bus drivers must be appointed on the recommendation of the county superintendent or may the county board of public instruction for good cause shown reject the recommendation of the county superintendent and make a different appointment.

Several rules are involved in the answer to this question, but in the main it turns on the interpretation of Rule 8 governing the duties of county boards of public instruction which is as follows:

"8. To appoint all school bus drivers, upon recommendation of the county superintendent of public instruction, and to select duly qualified drivers in whom parents have confidence and a feeling of security for the safety and care of their children."

This rule is addressed to county boards of public instruction and requires them to appoint bus drivers in whom "parents have confidence and a feeling of security for the safety and care of their children." It is the duty of the county superintendent to recommend those physically and morally fit and who possess such other qualifications as the law imposes, to meet the requirement of confidence and security on the part of parents. If he fails to do this, the board may reject his recommendation but it cannot be rejected on personal or other grounds.

In this case the person recommended by the county superintendent was denied appointment by the board on the ground that he used the school bus for other purposes than that of transporting children to and from school and that he was an inveterate "jook" attendant.

The board being trustee for the school property, if he did in fact, persist in using the school bus for other than school purposes he should not have been recommended, so the board was within its right and duty in refusing to appoint him. The record does not disclose why this affinity for jooks and this Court is devoid of premonition on the point. We are not possessed of knowledge sufficient to pronounce the jook *malum in se* as a class. There may be some supported by a discriminating patronage, but judged by the record they have made in this Court, they are not retreats where moralists dare frequent; indeed, they are rather the arch incubators of vice, immorality and low impulses. Nothing in modern economy has so clarified our concept of hell's half acre. It is a tradition of the law to presume every one innocent until his guilt is proven, but with this kind of a background it would be too much to presume that a school bus driver who frequents the jook is there to represent the Red Cross or to pick up the children. In fact

if he enjoys the indulgences reputed to be dominant there, he is of a moral bent that disqualifies him to be the mentor of little boys and girls to and from school.

Under Rule 8 and other rules vesting a liberal discretion in the board of public instruction in the matter of appointing school bus drivers, it had a right to raise any question affecting his moral or legal qualifications and if proven to be disqualified in either respect it would require the county superintendent to make another recommendation. If he refuses to do so the board of public instruction would be authorized to appoint on its own initiative.

Evidence on these points was excluded below so the judgment is reversed.

Reversed.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J. concur.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J. (concurring).—As stated in the opinion of Mr. Chief Justice TERRELL, Section 1 of Chapter 16170 is nothing more than a broad declaration of policy. It does not of itself purport to delegate any authority. However, Section 2 of said Act provides that the State Board of Education shall have power to fix and determine a maximum salary scale to be paid to teachers, and Section 3 provides that:

"The State Board of Education in addition to such general power of supervision as is now provided by law, and without limiting the same, shall have the following several additional specific powers and duties,"—which is followed by seven paragraphs, designated by the letters "A" to "G," respectively. One of these paragraphs, paragraph "E," is as follows:

"To fix and enforce standards of maximum costs, minimum requirements of equipment, qualifications of drivers, distance traveled and pupil-miles per bus in the transportation of school children."

It will be noted that said paragraph "E" does not delegate to the State Board of Education the power to select or appoint bus drivers, but we have already held that this power can be exercised by the county boards of public instruction.

The case of Board of Public Instruction v. Kennedy, 109 Fla. 153, 147 So. 250, was one involving the liability of the County Board of Public Instruction of Okaloosa County, in an action at law by Kennedy, a bus driver, for a balance due for services rendered by him under contract with said board. This Court held that the county board of public instruction had authority to contract for such services, and if such contract was breached and payment not made therefor as agreed, an action at law would lie against such county board. In that case Mr. Chief Justice DAVIS, speaking for the Court, said:

"A board of public instruction created under the laws of the State of Florida has the right, within the limits of its statutory authority, to contract with teachers and other persons, for the rendition of personal services required to be utilized in and about the operation or maintenance of the public schools, *when appropriate to carry out the plan or system provided for by law.* And in the event any lawfully made contract for personal services is breached, or the services rendered under it are not paid for as agreed, an action at law therefor will lie against the board, and judgment on the cause of action that has accrued may be rendered against it, as in the case of other public bodies corporate, which may become liable to judgment in an action *ex contractu.*" (Emphasis supplied.)

So the main question involved in this case, as I see it, i. e., the power of the board of public instruction to select or appoint bus drivers, as an incident to the maintenance of the public school system in the county, has already been settled by this Court. That power carries with it the responsibility and duty of making a wise and prudent selection. Therefore the county board is not bound to appoint any and all bus drivers who may be recommended by the county superintendent of public insrtuction.

The rule, quoted in the majority opinion, which was adopted by the State Board of Education, which gives the county superintendent of public instruction the power to recommend, is, I think, correctly construed in the foregoing opinion of Mr. Chief Justice TERRELL, and is in line with our previous opinion and decision in the case of Board of Public Instruction of Okaloosa County v. Kennedy, *supra*.

In this connection see also the opinion of Mr. Justice BUFORD in the case of Burnett v. Allen, 114 Fla. 489, 154 So. 515.