William E. Crotty Attorney for Halifax Hospital District Daytona Beach
QUESTION:
If the Legislature enacts a special act abolishing an existing hospital district and creating a new hospital district, expanding the boundaries thereof and extending the district's taxing authority throughout the enlarged district, with such special act conditioned to go into effect only upon approval in a referendum election held in the territory affected, would the referendum requirements of s. 3, Art. III, and s. 9(b), Art. VII of the State Constitution be met by holding a single referendum election for all qualified voters within the territory affected at which the questions of the approval or rejection of such special act and the approval of the maximum millage rate authorized by such act are voted on?
SUMMARY:
A single referendum may be held on the two issues — approving a special act abolishing Halifax Hospital District, creating a new and enlarged district, and passing on the special district millage as authorized by the act voted on. It would be necessary for the notice of the election, pursuant to s. 10, Art. III, State Const., and ballot utilized in submitting the two subjects to the electors to show the substance of the special act, as well as for the purposes of s. 9(b), Art. VII, State Const., the specified millage rate or a maximum millage rate authorized by the act to be voted on by the voters, who would approve or reject the special act itself and approve or disapprove the millage rate authorized therein.
Your question is answered in the affirmative.
Two provisions of the State Constitution are of impact in respect to the above-posed question. First, s. 10, Art. III, State Const., provides:
 No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.
The second constitutional provision drawn into question is s. 9(b), Art. VII, which provides in pertinent part:
 Ad valorem taxes . . . shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: . . . for all other special districts a millage authorized by law approved by a vote of the electors . . . therein . . . .
Section 10, Art. III, State Const., specifies alternative means of providing notice to affected persons regarding the enactment of a special law. Pursuant to such constitutional section, notice of intention to seek enactment of the special law must be published in a manner as provided by general law. See ss. 11.02-11.03, F. S. Such notice requirements, however, are not required when the special law enacted by the Legislature is conditioned to become effective only upon approval by a vote of the electors in the area affected.
In your opinion request you note that the special act being contemplated would create a new Halifax Hospital Medical Center District with identical powers as are presently reposed in the district but with new enlarged district boundary lines. Such contemplated special act would also contain a repealer clause which would abolish the existing Halifax Hospital Medical Center District. Such contemplated special act would be conditioned to go into effect only upon approval in a referendum election held for all qualified voters within the area affected, i.e., the territory of the newly created district.
Since the existing special taxing district would be abolished upon voter approval of the contemplated special act and an entirely new special taxing district with boundaries greater than the old district would be created, the area affected would clearly be the entirety of that area falling within the boundary lines defined in the contemplated special act.
The next issue to be addressed is whether a separate referendum must be held after voter approval of the special act in order to comply with the requirements of s. 9(b), Art. VII of the State Constitution or whether a single referendum submitting both issues or questions to the electors would be sufficient to comply with both s. 10, Art. III, and s. 9(b), Art. VII. Section 9(b), Art. VII, requires that a special district millage be authorized by law `approved by a vote of the electors' within the district. As noted in AGO 071-310 this referendum provision appears to be self-executing in the sense that it requires no express legislative directive in order to carry out its mandate. The contemplated special act will, of course, define maximum millage authorized to be levied upon the real property and tangible personal property within the district.
In AGO 075-160 the issue of the maximum ad valorem tax millage levied by the Northwest Lake County Hospital District was treated. That opinion involved the question of whether a special act enacted subsequent to the ratification of the 1968 State Constitution, which special act increased the maximum millage authorization for the district, was valid. Neither the act nor that part of the act authorizing a higher millage levy had been submitted to the electors within the district for their approval or rejection. The opinion holds that in such circumstances s. 9(b), Art. VII, prohibited the district from levying ad valorem taxes at the increased millage rate until such time as the authorization for the higher millage levy was approved by a vote of the electors of the district.
It would appear that the referendum regarding voter approval of the special act creating the newly expanded Halifax Hospital Medical Center District and approving the maximum millage rate authorized to be levied by such special act within the territory of the newly created district must meet the requirements of s.101.161, F.S. Such statute provides in pertinent part:
 Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed on the ballot after the list of candidates, followed by the word `for,' and also by the word `against.' The wording of the substance of the amendment or other public measure to appear on the ballot shall be embodied in the joint resolution, constitutional revision commission proposal, constitutional convention proposal, or enabling resolution or ordinance and shall be furnished to the supervisor of elections of each county in which such public measure is to be voted on.
Pursuant to s. 101.161, F. S., it would be necessary for the ballot utilized in connection with the said referendum to show the substance of the proposed special act as well as for purposes of s. 9(b), Art. VII, the specified millage rate or a maximum millage rate to be approved or rejected.
In Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954), it was asserted that a special act, among other things, authorizing the Hialeah City Council to appoint a board to prepare a new city charter had not been properly approved in the referendum called for in the act for the asserted reason that the entire bill should have been printed on the ballot rather than the proposition voted on, `[s]hall the . . . Council appoint a Board to prepare a proposed new City Charter as provided by Chapter 29113[, 1953] . . . .' The court held that the approval of the appointment of the board was necessarily the approval of the act and in rejecting the above argument stated:
 We cannot agree with the argument advanced by appellants that Section 2 of the Act required the printing of the whole bill on the ballot. In the first place, we take judicial knowledge of the limitations inherent in the use of voting machines so far as the amount of printed material thereon is concerned. In numerous instances we have held that the only requirements in an election of this kind are that the voter should not be misled and that he have an opportunity to know and be on notice as to the proposition on which he is to cast his vote. In the case of Sylvester v. Tindall, 154 Fla. 663, 18 So.2d 892, we passed upon the sufficiency of the ballot used in the general election when the Constitutional Amendment creating and establishing the Game and Fresh Water Fish Commission was submitted to the electorate of this State. That act is far more involved than the act under discussion here and when approved by the electorate became a part of the organic law in the State. We approved there a proposition on the ballot consisting of thirty-six words. In this connection we take judicial knowledge of the many other Constitutional Amendments of much greater length that have been submitted to and approved by the electorate of this State and which have become a part of our organic law. All that the Constitution requires or that the law compels or ought to compel is that the voter have notice of that which he must decide. It is a matter of common knowledge that many weeks are consumed, in advance of elections, apprising the electorate of the issues to be determined and that in this day and age of radio, television, newspaper and the many other means of communicating and disseminating information, it is idle to argue that every proposition on a ballot must appear at great and undue length. Such would hamper instead of aiding the intelligent exercise of the privilege of voting. It is a matter of common knowledge that one does not wait until he enters the election booth to decide how he is going to cast his ballot. What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot. We think the ballot under question amply complies with these requirements.
Additionally, s. 100.342, F. S., entitled `Notice of special election or referendum' provides:
 In any special election or referendum not otherwise provided for there shall be at least 30 days' notice of the election or referendum by publication in a newspaper of general circulation in the county, district, or municipality, as the case may be. The publication shall be made at least twice, once in the fifth week and once in the third week prior to the week in which the election or referendum is to be held. If there is no newspaper of general circulation in the county, district, or municipality, the notice shall be posted in no less that five places within the territorial limits of the county, district, or municipality.
In view of the aforementioned authorities, the board or officials designated in the contemplated special act to call and conduct the referendum provided for in the act, at the time such officials adopt the resolution or ordinance providing for and calling the referendum election, will have to specify in such resolution or ordinance the phrasing or wording of the substance of both questions or matters to appear in the notice of election being called, as they will appear on the ballot. The voters will have to be notified that there is to be an election or referendum on the aforementioned matters and notified at the voting booth by the ballot question of the substance of both the special act and the rate of the proposed ad valorem tax millage that they are voting on. Further, when the contemplated special act is conditioned to become effective upon approval of the qualified voters within the area affected, and such contemplated special act repeals the enabling legislation regarding the existing special tax district and creates a new special taxing district with identical powers but with expanded boundaries, the area affected for purposes of referendum pursuant to s. 10, Art. III, would be the entirety of the area within the boundaries defined in the contemplated special act to be voted upon. Finally, assuming otherwise the compliance of the referendum with the requirements imposed by law regarding notice of the election and sufficiency of the ballot questions, a single referendum election may be held regarding the approval or rejection of the special act itself and the approval or disapproval of the millage rate authorized by the act to be voted on, which election would comply with both s. 10, Art. III, and s. 9(b), Art. VII of the Constitution.
Prepared by:
Harold F. X. Purnell Assistant Attorney General