Taft, J.
If the Court of Appeals was correct in determining as it did that there were 364 valid signatures and if it was *157 incorrect in determining as it did that 11 signatures were invalid merely because an incorrect precinct bad been inserted after each of them, then there would have been 375 valid signatures, which would be four more than the required 371, and the judgment of the Court of Appeals should be reversed.
The Charter of the City of Mayfield Heights is silent with regard to whether a signer must place his ward and precinct on a referendum petition. However, so far as pertinent, Section 731.31, Revised Code, reads:
‘ ‘ * * * Each signer of any such petition must be an elector of the municipal corporation in which the election, upon the * * * ordinance * * * referred to by such referendum petition, is to be held, and shall place on such petition, after his name, the date of signing, his place of residence, including street and number, and the ward and precinct.” (Emphasis added.)
Also, Section 4 of Article VIII of the Charter of the City of Mayfield Heights reads so far as pertinent :
“ * * * Tbe manner of signing, the method of circulating, the form and requirements as to the affidavit, and the other requirements of the general laio regulating initiative and referendum petitions, shall apply in the case in initiative, referendum and recall in this city except as otherwise provided in this charter.” (Emphasis added.)
In State, ex rel. Poor, v. Addison et al., Council, 132 Ohio St., 477, 481, 9 N. E. (2d), 148, it is stated in the opinion “by the court ’ ’:
“ * * * The law is clear that the ward and precinct, whether written in by the signer himself or by someone else under his direction, must follow the signature of the signer in a petition on an initiative petition as in the case at bar. By reason thereof we hold that in a registration city like Columbus, on an initiative petition, a signature not followed, amongst other requirements, by the ward and precinct of the signer does not comply with Section 4227-4, General Code [now Section 731.31, Revised Code], and, therefore, cannot be held to be a valid and sufficient signature.”
The city of Mayfield Heights had no wards but registrations therein were by precincts. Hence it was essential to the validity of a signature on the referendum petition involved in the in- *158 staixt case that it be followed by the correct precinct of the signer.
With respect to withdrawal of names from the referendum petition by the so-called connterpetitions, relator first contends that such withdrawals could not be effected after the petition had been filed. He points out that neither the city charter nor the general laws regulating municipal referendums make any provision for withdrawal of names of signers of a referendum petition. However, we believe that this contention must be rejected because of previous decisions of this court. Of. annotations, 126 A. L. R., 1031, 27 A. L. R. (2d), 604. Thus, in State, ex rel. Kahle, v. Rupert, Aud., 99 Ohio St., 17, 122 N. E., 39, it is said in the opinion “by the court”:
“In the absence of statutory provisions to the contrary an elector signing a petition authorised by the statutes of this state, invoking either official or judicial action, has a right to withdraw his name from such petition, or, if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken thereon.
C C * # *
“While the statute [now Section 731.29, Revised Code] does not in terms provide how soon after the expiration of ten days the clerk or city auditor must certify the same to the board of * * * election * * * such officer must perform this duty within a reasonable time thereafter. Upon his failure to certify within a reasonable time * * * mandamus will lie to compel him to perform his duty under the statute. He cannot arbitrarily withhold certifying such petition * * * for the purpose of permitting the withdrawal of further signatures; but until official action is taken by him, or an action in mandamus is brought, any person signing a petition has the right to withdraiv his name therefrom.
“* * * A city auditor is not required to certify * * * a petition for referendum that does not comply with the provisions of * * * [the statute]. However, the conclusion he may reach as to whether such petition does or does not conform to the provisions of that section is not final. That is a question to be adjudicated by the court in an action either to restrain the auditor from certifying the same or to compel him to do so. In such proceeding, the question of the sufficiency of the referendum *159 petition will be determined as of the date of the commencement of the action.” (Emphasis added.)
See also State, ex rel. McLain, v. Bailey et al., Council, 132 Ohio St., 1, 4 N. E. (2d), 141; Hays v. Jones, 27 Ohio St., 218; Dutten v. Village of Hanover, 42 Ohio St., 215; McGonnigle v. Arthur, 27 Ohio St., 251; and Neiswander v. Brickner, 116 Ohio St., 249, 252, 156 N. E., 138. But cf. County Board of Education v. Board of Education of Hartsburg Rural Special School Dist., 112 Ohio St., 108, 112, 113, 146 N. E., 812.
The Court of Appeals as the trier of the facts found that the clerk had not “taken any official action upon or in connection with said referendum petition until” after the counterpetitions had all been filed, i. e., on or before October 10, 1955. In our opinion the record fully sustains this conclusion. This action was not commenced until October 28, 1955.
Relator argues that the foregoing authorities should no longer be followed because of the subsequent enactment in 1941 of Section 4785-177a, General Code (now Section 3519.11, Revised Code), specifically providing for withdrawal of names from referendum petitions relating to statutes in certain instances and because of the failure of the General Assembly to enact a similar provision relating to municipal referendums.
There might be some force to such an argument if the statutes relating to municipal referendums had not been previously enacted, and also if they had not been previously construed by this court as permitting the withdrawal of names of signers. However, we do not believe that we can imply an intention of the General Assembly to provide against withdrawal of names of signers from a municipal referendum petition merely because it made no provision for such withdrawal at a time when it was providing for such withdrawal with respect to state referendum petitions, especially when it was not then legislating relative to municipal referendum petitions. If, by what it does, the General Assembly intends in effect to change the law as previously announced by this court, it should express such an intention. Such an intention will not ordinarily if ever be implied from its silence.
Furthermore, within the last three years the General Assembly enacted Section 3513.291, Revised Code, which reads:
*160 “Any elector signing a petition shall not withdraw his name therefrom after the petition has been filed with a board [of elections] or with the Secretary of State. This section shall apply to all types of petitions except those specified in Section 3519.11, of the Revised Code.’7
That the General Assembly by this statute did not intend to place any limitation upon the previously recognized right to withdraw a name from a municipal referendum petition before such petition reached the board of elections is apparent from the fact that this statutory provision is applicable “to all types of petitions except those specified” in a statute dealing with referendum petitions relating to statutes, and from the fact that the language of this section recognizes by necessary implication a right to withdraw a name before a petition other than of the kind excepted has been filed with an election board or the Secretary of State. It may be noted that the statutes relative to municipal referendums specifically provide for certification of a referendum petition to the board of elections sometime “after 10 days” from its filing with the city auditor or clerk. See Section 731.29, Revised Code. The problem as to how soon “after 10 days” such certification must take place is apparently almost the same under the words of the present statute as it was under its predecessor. That problem was dealt with in the above-quoted portion of the opinion “by the court” in State, ex rel. Kahle, v. Rupert, supra (99 Ohio St., 17).
We recognize that the permitting of withdrawals of signatures after expiration of the time for the filing of a referendum petition may have some anomalous results. For example, under Section 731.29, Revised Code (formerly Section 4227-2, General Code), an ordinance may “go into effect” 30 days after it is filed with the mayor. However, “when” a referendum petition “signed by 10 per cent of the * * * electors” is filed within that 30 days, then the statute states that “no such ordinance * * * shall go into effect until approved by a majority of those voting upon it.” If there are sufficient valid signatures on such a referendum petition when it is filed and at the expiration of the 30 days from the time when the ordinance was filed with the mayor, may the ordinance then go into effect somewhat retroactively merely because sufficient signatures are *161 thereafter withdrawn therefrom before the clerk takes official action with respect to the petition so that the remaining number of signatures is reduced below the required 10 per cent? Or, in such an instance, is its going into effect merely suspended until the exact time when withdrawals reduce the remaining number below that 10 per cent? In 1915, it was the opinion of Attorney General Edward C. Turner, later a member of this court, that withdrawals could not be made after the foregoing 30-day period “for the reason that the petition had then operated to suspend the taking effect of the ordinance, thereby affecting a public right and may not thereafter be revoked or modified.” Opinions of Attorney General (1915), 824, 826.
However, this court’s decision in State, ex rel. Kahle, v. Rupert, supra (99 Ohio St., 17), permitting such withdrawals was rendered three years later and has been subsequently followed without even any dissent therefrom in two later decisions. State, ex rel. Nicholl, a Taxpayer, v. Miller, Clerk, 127 Ohio St., 103, 187 N. E., 75, and State, ex rel. McLain, v. Bailey, supra (132 Ohio St., 1). We believe therefore that, if the law as announced therein should be changed, such change should be made by the General Assembly.
Relator also contends that, if the withdrawal of a name from a petition can be effected, such withdrawal should not be permitted unless it is effected with substantially the same formalities as are required for the signing of such a petition. In so holding, it was stated in the opinion in State, ex rel. Westhues, Pros. Atty., v. Sullivan, Secy. of State, 283 Mo., 546, 224 S. W., 327, 339:
‘ ‘ The very purpose of the statute in requiring this formality was to obviate fraud. To get off of such a petition the action of the signer should be at least as formal. His request should at least be verified by his affidavit before some officer. This to the end that the Secretary of State might know that the signature to the request was genuine. A mere postal card or a letter purporting to be signed by a signer of the petition is not sufficient. Such course would open wide the gates for fraud.”
In Kelly, Clerk, v. State, ex rel. Tryon, 135 Fla., 346, 352, 353, 185 So., 157, 159, 160, it was held that there can be no withdrawal of a signature from a recall petition after it has been *162 filed except where the withdrawing signer personally appears before the clerk. However, the cases cited as authorities for that holding' were cases denying any right to withdraw signatures on a petition after its filing.
In Halgren v. Welling, Secy. of State, 91 Utah, 16, 31, 63 P. (2d), 550, 557, which is apparently the only other authority specifically considering and passing upon such a contention, it is stated in the opinion by Moffat, Justice:
“Granted the fundamental right of a petitioner to withdraw from a petition at any time before the petition has been acted upon, it would seem to follow, there being no prescribed requirement to the contrary, that the establishment of identity of the signer with that of the party indicating his withdrawal, should be sufficient.”
In our opinion, the conclusion so expressed logically follows from a consideration of what in substance a signature on a referendum petition represents. When an elector signs a referendum petition, he thereby expresses his assent to and agreement with the statements of the petition.
Where a signer of a petition subsequently expresses in writing his disagreement with the statements of such a petition and where that expression is made to the clerk who is charged by law with checking the petition before the clerk has taken any official action on the petition and where the clerk knows that the subsequent written expression is the expression of such signer, the signature of such signer on the petition can hardly be regarded any longer as representing to that clerk or to any reasonable person in the position of the clerk such signer’s assent to or agreement with the statements of the petition. Such clerk then has before him an equally clear and subsequent written dissent and disagreement with those statements.
As stated by Ashburn, J., in Hays v. Jones, supra (27 Ohio St., 218), 231:
“If a petitioner for the improvement * * * signs the petition, and he afterward subscribes a remonstrance against the affirmative action of the commissioners upon the petition, it is claimed he is still petitioning for the improvement in the attitude of one trying to convince the commissioners that it would not be advisable to grant their prayer as petitioners, but rather to *163 grant their prayer as remonstrants. This view * * * is not sound. They are for the improvement as prayed for, or against it, and cannot be allowed to occupy any middle ground. * * * one who has subscribed the petition may, at any time before the hoard makes the final order, by remonstrance or other unmistakable sign, signify his change of purpose. His assent is within his own control up to the time the commissioners move to make the final order. He could not, after having signed the petition for the improvement, be silent until after the order had been made for the improvement, and then put in a remonstrance that would avail him anything. The form or manner in which his dissent is made known is immaterial. If it is clearly made known to the board of commissioners, that is sufficient.”
Many of the formalities required with respect to referendum petitions (such as the date of signing, the place of residence and ward and precinct of the signer and the certificate and affidavit of the circulator) are designed not merely to obviate fraud but probably principally to help in the checking of the petition by facilitating the identification of the signers and a determination of their qualifications.
After a signature has been placed upon a referendum petition and all formal requirements met so that the signer can be identified and his qualifications determined, it is usually relatively simple to check a withdrawal request against his signature on the original petition. A comparison of his signature on the withdrawal request with what purports to be his signature on the referendum petition may often be sufficient without other evidence to verify his identity as a signer of the referendum petition.
Where the General Assembly has made compliance with certain formalities mandatory, at least substantial compliance therewith is usually required. See State, ex rel. Marshall, v. Sweeney, Secy. of State, 153 Ohio St., 208, 90 N. E. (2d), 869. However, where the General Assembly has not made compliance with such formalities mandatory, such compliance is not required. State, ex rel. Patton, v. Bazzell et al., Board of Elections, 161 Ohio St., 344, 119 N. E. (2d), 278. See State, ex rel. Leslie, v. Duffy et al., Board of Elections, 164 Ohio St., 178, 129 N. E. (2d), 632. Although the General Assembly has known *164 for many years that “in the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state * * * has a right to withdraw his name from such petition # * * at any time * * * before official action has been taken thereon” (State, ex rel. Kahle, v. Rupert, supra [99 Ohio St., 17]), it has not seen fit to provide for compliance with any formalities with respect to withdrawal of signatures from a municipal referendum petition.
If there may be any reasonable doubt as to whether a signer, who desires to withdraw his signature from a petition, has expressed such an intention, then the withdrawal should be given no consideration. Such doubt might exist where the intent to withdraw is not expressed in writing or the expression thereof does not definitely identify the particular petition involved. But, where the withdrawal of a signature from a petition is in writing and is clear and unequivocal and where the identity of the party seeking to withdraw his signature from the petition as the one who wrote that signature is established, no other formalities with respect to such withdrawal should be necessary in the absence of legislation requiring them.
The Court of Appeals, as the trier of the facts in the instant case, found that the 517 who signed the counterpetitions were signers of the referendum petition. Their subsequent written assents and agreements to the statements of the counterpeti-tions were clearly inconsistent with any assents or agreements to the statements of the referendum petition.
It follows that the failure of the counterpetitions, relating to withdrawal of signatures from the referendum petition in the instant case, to have dates of signing, places of residence or precincts for signers, or certificates or affidavits of circulators does not prevent their operating as withdrawals of signatures from the referendum petition.
It may be that this ruling with respect to the manner of effecting a withdrawal of a signature from a municipal referendum petition, as well as the previous rulings of this court permitting withdrawal of signatures after expiration of the time for filing of a referendum petition, will operate to unfairly disappoint circulators and other signers of petitions who have reasonably relied upon the validity of the signatures thereto and *165 the expressed intentions of those other signers who subsequently withdraw their signatures from the petition. Further, the lack of any required formalities, with respect to withdrawal of signatures from municipal referendum petitions, may make checking of such petitions unreasonably difficult, and may even invite fraudulent practices. If so, such matters should be called to the attention of the General Assembly. This court certainly does not have the legislative power necessary to require such formalities.
After 13 of the names of signers of the counter petitions appeared the date August 26, 1955, which was a date prior to the dates upon which those 13 signed the referendum petition. The Court of Appeals specifically found that this date of August 26, 1955, as inserted with respect to these. 13 signers, “was an error.” As hereinbefore indicated, insertion of any date on the counterpetitions was not necessary. Hence, insertion of an erroneous date would not be material unless it might, as it could not in the instant case, raise some reasonable doubt as to whether the 13 signers intended to withdraw their signatures from this particular referendum petition.
In deciding this ease it is obviously not necessary for this court to decide whether the Court of Appeals was correct in determining as valid the 25 signatures of those who first signed the referendum petition, then signed the later counterpetitions, and finally signed the subsequent written requests that their signatures to the counterpetitions be withdrawn and their original signatures to the referendum petition be reinstated. We therefore express no opinion with regard to that determination.

Judgment affirmed.

Weygaxdt, C. J., ZimmermaN, Stewart, Bell, Matthias and Herbert, JJ., concur.